Filed 6/15/17

# IN THE SUPREME COURT OF CALIFORNIA

JAIME A. SCHER et al.,                )
                                      )
        Plaintiffs and Appellants,    )
                                      )        S230104
        v.                            )
                                      )        Ct.App. 2/3 B235892
JOHN F. BURKE et al.,                 )
                                      )        Los Angeles County
        Defendants and Appellants.    )        Super. Ct. No. BC415646
_____)


In *Gion v. City of Santa Cruz* (1970) 2 Cal.3d 29, this court held that private owners of certain coastal property who allowed the public to use the property for recreational purposes over a period of years thereby impliedly dedicated property rights to the public. In response to that decision, the Legislature enacted Civil Code section 1009, which limits the circumstances in which courts may find implied dedication of private coastal property. (Civ. Code, § 1009 (section 1009); see *id.*, subds. (e)–(g).) The statute further provides that "no use" of private noncoastal property after the statute's 1972 effective date ordinarily may give rise to "a vested right" in the public to continue using the property permanently, unless the property owner makes an express, irrevocable offer to dedicate the property to public use. (*Id.*, subd. (b).)

The question in this case concerns the application of section 1009 to a claim that private owners of noncoastal property have impliedly dedicated their land for use as a public road. Plaintiffs argue that the restriction on implied

1

dedication in section 1009, subdivision (b) does not apply to property used by the public for nonrecreational vehicle access, as opposed to property used for recreational purposes. We agree with the Court of Appeal that the statute draws no such distinction, and we accordingly affirm its judgment.

## I.

Plaintiffs Jaime Scher and Jane McAllister own land in the Topanga Canyon area of Los Angeles County. They would like to access their property by driving on two roadways that cross their neighbors' land, rather than taking other, less convenient routes to their property. Some of those neighbors would prefer otherwise, however, and have blocked the roadways with gates.

Scher and McAllister sued. Among other things, they sought a declaration that their neighbors (or their neighbors' predecessors) had "acquiesced to the dedication" of the routes as public roadways. The trial court agreed. As relevant here, the court concluded that the neighbors or their predecessors had impliedly offered to dedicate the roadways to public use. First, the court found that an offer to dedicate the roadways was "implied in fact," based on several "Declarations and Grants of Easements," as well as certain maps prepared by the federal government, which previously owned the land at issue. Second, the court found that an offer to dedicate was "implied in law," because the public had used the roadways "for more than the period of prescription" of five years. (See *Gion v. City of Santa Cruz*, *supra*, 2 Cal.3d at p. 38 (*Gion*).) These offers of dedication, the court continued, had been "accepted by the public['s] use of the property." [1]

---

[1]    Scher and McAllister also sought a declaration that they should benefit from an easement across the roads. The trial court accepted their arguments in part, but the Court of Appeal did not. These claims are not now before us.

2

The trial court also considered whether section 1009 barred any finding of implied dedication.  The court concluded that section 1009 is inapplicable because the land at issue is not coastal property, and because "section 1009 does not restrict the implied dedication of public roads for nonrecreational uses."

The Court of Appeal reversed.  The court held that section 1009, subdivision (b) unambiguously "bars *all* public use, not just recreational use, from developing into an implied public dedication."  In so holding, the court disagreed with other cases that had described section 1009, subdivision (b) as applying only to recreational uses.  (*Hanshaw v. Long Valley Road Assn.* (2004) 116 Cal.App.4th 471, 484–485 (*Hanshaw*); see also *Pulido v. Pereira* (2015) 234 Cal.App.4th 1246, 1252 (*Pulido*); *Bustillos v. Murphy* (2002) 96 Cal.App.4th 1277, 1280–1281 (*Bustillos*).)  Having concluded that evidence of post-1972 use of the roadways was inadmissible, and finding no other adequate evidentiary basis for finding that the roadways had been impliedly dedicated to public use, the Court of Appeal directed the trial court to enter a declaratory judgment in favor of defendants.

We granted review to resolve the disagreement among the Courts of Appeal about whether section 1009, subdivision (b) applies to nonrecreational use of private noncoastal property.[2]

## II.

This case concerns the law of dedication, under which a private landowner may transfer an interest in real property to the public.  Under the common law, a

---

[2]     Given the limited scope of our review, we do not address any questions about the proper application of section 1009, subdivision (b) to a claim that an implied offer to dedicate a roadway was accepted by public use.  Nor do we address plaintiffs' argument that the Court of Appeal erred in applying the substantial evidence standard in reviewing the trial court's judgment.

dedication may be made either expressly or by implication. (*People v. Marin County* (1894) 103 Cal. 223, 227; see also, e.g., *County of Los Angeles v. Berk* (1980) 26 Cal.3d 201, 219 (*Berk*).) Common law dedication, whether express or implied, requires both an offer of dedication and an acceptance of that offer by the public. (*Diamond Match Co. v. Savercool* (1933) 218 Cal. 665, 669.) An offer of dedication may be "implied in fact" if there is proof of the owner's actual consent to the dedication. (*Union Transp. Co. v. Sacramento County* (1954) 42 Cal.2d 235, 241; *Gion*, *supra*, 2 Cal.3d at p. 38.) An offer of dedication may also be "implied by law" (*Union Transp. Co.*, *supra*, 42 Cal.2d at p. 241) if the public has openly and continuously made adverse use of the property for more than the prescriptive period (*Gion*, *supra*, 2 Cal.3d at p. 38).

More than 40 years ago, we applied the doctrine of implied dedication in *Gion*, *supra*, 2 Cal.3d 29, which was consolidated for decision with *Dietz v. King* (*Dietz*). Both cases concerned whether an interest in private coastal property had been impliedly dedicated for public use. (*Id.* at pp. 34–39.) *Dietz* also concerned the claimed dedication of an unimproved dirt road leading to that coastal property. (*Id.* at p. 36.) In addressing these claims, we first resolved two general questions about the doctrine of implied in law dedication that had caused confusion in the lower courts. We explained that the law of implied dedication for public use, unlike the law of adverse possession or easement by prescriptive rights, does not require a showing of a personal claim of right. Rather, litigants "seeking to show that land has been dedicated to the public need only produce evidence that persons have used the land as they would have used public land" for more than the prescriptive period of five years. (*Id.* at p. 39.) When such a showing has been made, we further held, the law will not presume that the public has used the property under a license from the owner. (*Id.* at pp. 40–41.) An owner who seeks to negate a finding of intent to dedicate the lands therefore "must either

4

affirmatively prove that he has granted the public a license to use his property or demonstrate that he has made a bona fide attempt to prevent public use." (*Id.* at p. 41.)

We next considered "whether the rules governing shoreline property differ from those governing other types of property, particularly roads." (*Gion*, *supra*, 2 Cal.3d at p. 41.) We acknowledged that "[m]ost of the case law involving dedication in this state has concerned roads and land bordering roads. [Citations.]" (*Ibid.*) We held, however, that "[t]he rules governing implied dedication apply with equal force . . . to land used by the public for purposes other than as a roadway" (*id.* at pp. 41–42), citing cases concerning dedication of rights in park land, athletic fields, and beaches (*id.* at p. 42).

Putting all of these principles together, we held "that there was an implied dedication of property rights" in both *Gion* and *Dietz*, based on evidence of continuous use of the contested coastal property for public recreation purposes. (*Gion*, *supra*, 2 Cal.3d at p. 43.) In *Gion*, we noted, "the public use of the land [was] accentuated by the active participation of the city in maintaining the land and helping the public to enjoy it." (*Id.* at pp. 43–44.) But in both cases, we considered it determinative that "the public used the land in public ways, as if the land was owned by a government, as if the land were a public park." (*Id.* at p. 43.)

"Commentators were severe in their criticism" of the decision. (*Berk*, *supra*, 26 Cal.3d at p. 228 (dis. opn. of Clark, J.), citing sources.) Among other things, many commentators thought it inequitable that "[t]hose landowners who were neighborly and hospitable in permitting public use were penalized by *Gion-Dietz* by loss of their land, while those excluding the public by fencing or other means were rewarded by retention of their exclusive use." (*Id.* at p. 229.) Commentators also criticized the decision as "counterproductive," because it

5

encouraged landowners to "exclude the public" from their land to avoid implied dedication.  (*Ibid.*)

The year after we decided *Gion*, the Legislature enacted section 1009. (Stats. 1971, ch. 941, § 2, p. 1846, chaptering Sen. Bill No. 504 (1971 Reg. Sess.).)  Subdivision (a) of section 1009 recites the Legislature's findings that "[i]t is in the best interests of the state to encourage owners of private real property to continue to make their lands available for public recreational use" (§ 1009, subd. (a)(1)); that "[o]wners of private real property are confronted with the threat of loss of rights in their property if they allow or continue to allow members of the public to use, enjoy or pass over their property for recreational purposes" (*id.*, subd. (a)(2)); and that "[t]he stability and marketability of record titles is clouded by such public use, thereby compelling the owner to exclude the public from his property" (*id.*, subd. (a)(3)).

In subdivisions (e) through (g) of section 1009, the Legislature addressed dedication of coastal property, defined as property that "lies within 1,000 yards inland" of certain markers.  (§ 1009, subd. (e).)  Of particular significance, subdivision (f) instructs that, following the statute's 1972 effective date, "[n]o use" of coastal property "by the public . . . shall constitute evidence or be admissible as evidence that the public or any governmental body or unit has any right in such property by implied dedication if the owner" posts signs (see Civ. Code, § 1008), publishes a notice in a local newspaper (see Gov. Code, § 6066), records a notice (see Civ. Code, § 813), or enters into a written agreement with a governmental agency "providing for the public use of such land."  (*Id.*, subd. (f)(1)–(3).)

Subdivision (b) of section 1009, the focus of our inquiry here, applies to noncoastal property.  (Cf. § 1009, subd. (e).)  It instructs that "[r]egardless of whether or not a private owner of real property has recorded a notice of consent to

use of any particular property pursuant to Section 813 of the Civil Code or has posted signs on such property pursuant to Section 1008 of the Civil Code, except as otherwise provided in subdivision (d), no use of such property by the public after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use . . . ." (*Id.*, subd. (b).)[3]

### III.

### A.

The question in this case is whether section 1009, subdivision (b) applies to nonrecreational use of roadways for vehicle access as it applies to recreational use of other private noncoastal property. We begin, as always, by examining the text of the statute, as " 'the statutory language is generally the most reliable indicator' " of legislative intent. (*People v. Castillolopez* (2016) 63 Cal.4th 322, 329, quoting *Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040.) Subdivision (b) instructs, as relevant here, that "whether or not a private owner of real property has recorded a notice of consent to use of any particular property . . . or has posted signs on such property . . . , no use of such property by the public after the

---

[3] The exception in section 1009, subdivision (d), which is not relevant here, concerns private lands improved, cleaned, or maintained by public entities: "Where a governmental entity is using private lands by an expenditure of public funds on visible improvements on or across such lands or on the cleaning or maintenance related to the public use of such lands in such a manner so that the owner knows or should know that the public is making such use of his land, such use, including any public use reasonably related to the purposes of such improvement, in the absence of either express permission by the owner to continue such use or the taking by the owner of reasonable steps to enjoin, remove or prohibit such use, shall after five years ripen to confer upon the governmental entity a vested right to continue such use."

7

effective date of this section shall ever ripen to confer upon the public . . . a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use . . . ."  (§ 1009, subd. (b).)  This prohibition on reliance on post-effective-date use of private property does not distinguish between recreational use and nonrecreational use.  Rather, the prohibition is written in categorical terms:  "*no use*" of the subject property after March 1972 "shall ever ripen" into an implied dedication of the property to the public.

In arguing that section 1009, subdivision (b) nevertheless applies only to recreational uses, plaintiffs point to the legislative findings in section 1009, subdivision (a).  As plaintiffs emphasize, the findings make clear that the Legislature's primary concern in enacting section 1009 was to "encourage owners of private real property to continue to make their lands available for public *recreational* use."  (§ 1009, subd. (a)(1), italics added.)  Plaintiffs argue that subdivision (b)'s reference to the use of "such property" must be understood to refer to these findings, and thus should be interpreted to mean " 'private real property made available for public recreational use' (paraphrasing subdivision (a)).  (*Hanshaw v. Long Valley Road Ass'n*, *supra*, 116 Cal.App.4th at p. 485.)"

As a textual matter, this is an implausible reading.  To interpret the phrase "such property" as plaintiffs suggest, we would have to skip over its immediate antecedents in section 1009, subdivision (b) — "real property" and "any particular property," neither of which connotes any limitation to property made available for public recreational use — and reach all the way back to section 1009, subdivision (a).  We would, moreover, have to accept plaintiffs' invitation to rely on a "paraphras[e]" of subdivision (a), rather than on the actual text of the subdivision — which also refers to "private real property" in general terms.  This argument bends the usual rules of textual interpretation past their breaking point.

8

The principal thrust of plaintiffs' argument, however, relies less on the statutory text and more on a set of inferences about legislative intent based on the findings in section 1009, subdivision (a). Plaintiffs argue that because subdivision (a) reveals that the Legislature's primary concern was encouraging landowners to open their property to public recreational use, the prohibition in section 1009, subdivision (b) should be understood as implicitly limited to public recreational uses. This argument, too, is unavailing. As a general rule, when the Legislature uses a term in one provision of a statute but omits it from another — as it did when it referred to "recreational use" in subdivision (a), but referred to "use" alone in subdivision (b) — we generally presume that the Legislature did so deliberately, in order " 'to convey a different meaning.' " (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80.) We have no reason to doubt that the choice was deliberate in this case. Interpreting subdivision (b) as written creates no apparent inconsistency with the Legislature's findings in subdivision (a). The Legislature might reasonably have concluded that unless subdivision (b) extended to all uses of privately owned property, landowners skeptical of their ability to distinguish recreational users from nonrecreational users might decide to exclude all users alike to avoid "the threat of loss of rights in their property" (§ 1009, subd. (a)(2)) or clouding "[t]he stability or marketability of record titles" (*id*., subd. (a)(3)). And, to the extent that the Legislature's goal was to encourage landowners to continue to make their property open for public use more generally, interpreting subdivision (b) as written is consistent with that aim. In sum, the Legislature's expressed concern with public recreational use of private lands in subdivision (a) " 'does not mean that a court may add this concept as a separate requirement in the operative sections of the statute' " when the Legislature chose not to do so. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 61 (*Equilon Enterprises*) [rejecting argument that

9

Code of Civil Procedure section 425.16 (dismissal of strategic lawsuit against public participation) should be interpreted in light of its preamble to require a demonstration that a challenged claim was brought with the intent to chill the defendant's exercise of constitutional speech or petition rights].)

Nor is plaintiffs' proposed recreational use limitation implicit in the remaining provisions of section 1009 or other provisions of the statutory scheme. Plaintiffs point to subdivision (c) of section 1009, which provides that "[i]n addition to any procedure authorized by law and not prohibited by this section, an irrevocable offer of dedication may be made in the manner prescribed in Section 7050 of the Government Code," a provision authorizing property owners to make irrevocable offers of dedication for public purposes by recording the offer in the same manner as a conveyance of real property. (See Gov. Code, § 7050.) Based on this language, plaintiffs reason that "methods of dedication" that fall outside of Government Code section 7050 are not completely eliminated by subdivision (b) of Civil Code section 1009. This is true, but it does not help their case. No one doubts that the law continues to permit dedications of noncoastal property to the public under provisions of law other than Government Code section 7050. (See, e.g., Gov. Code, §§ 66475, 66477; see also *id.*, § 7050 [noting that the procedures set forth in the section are "alternative to any other procedure authorized by law"].) It is a separate question whether the law continues to permit courts to find implied dedication based solely on post-1972 nonrecreational use of defendants' property as a roadway. It does not.

Plaintiffs also point to Civil Code sections 813 and 1008, which provide that landowners may record a specified notice (§ 813) or post signs at particular intervals (§ 1008) to indicate that the use of their property is permissive (and, thus, not adverse). Plaintiffs argue that if section 1009, subdivision (b) prohibits reliance on any use of noncoastal property, not just recreational use, then these

10

provisions are superfluous. While we ordinarily construe enactments to avoid rendering any provision superfluous (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459), there is no superfluity here. Plaintiffs themselves acknowledge (as they must) that these provisions retain relevance for owners of coastal property. (§ 1009, subd. (f)(1) & (2).) The provisions may also bear on whether a landowner has given "express permission" for the public to use lands improved by the expenditure of government funds. (§ 1009, subd. (d).) And in any event, sections 813 and 1008 expressly relate to prescriptive rights, regardless of whether implied dedication is at issue. (Civ. Code, § 813 [providing that the prescribed notice is "conclusive evidence" of permissive use "in any judicial proceeding involving the issue as to whether all or any portion of such land has been dedicated to public use *or whether any user has a prescriptive right*," italics added]; Civ. Code, § 1008 [providing that if a landowner posts certain signs, "[n]o use by any person or persons, no matter how long continued, of any land, shall ever ripen into *an easement by prescription*," italics added].) In short, sections 813 and 1008 retain force even if we read subdivision (b) of section 1009 in accordance with its terms.

Finally, plaintiffs contend that interpreting section 1009, subdivision (b) to apply to the implied dedication of private property for public nonrecreational vehicle access would effectively abrogate a substantial body of case law concerning the dedication of roadways. In plaintiffs' view, this "would be a major departure from long-standing law without a clear expression of legislative inten[t] to do so." It is true, as we noted in *Gion*, that "[m]ost of the case law involving dedication in this state has concerned roads and land bordering roads. [Citations.]" (*Gion*, *supra*, 2 Cal.3d at p. 41.) This, we explained, "arises from the ease with which one can define a road, the frequent need for roadways through private property, and perhaps also the relative frequency with which express

11

dedications of roadways are made." (*Ibid*.) But as *Gion* explained, there was also, at the time, a substantial and long-standing body of case law concerning the implied dedication of land for other purposes, including for use as parks, athletic fields, and beaches. (*Id.* at pp. 41–42, citing cases.) *Gion* concluded, based on this history, that "[t]he rules governing implied dedication apply with equal force . . . to land used by the public for purposes other than as a roadway." (*Ibid.*)

Subdivision (b) of section 1009 was clearly designed to alter this body of law, but it does not eliminate it entirely. Subdivision (b) contains an exception for situations in which a governmental entity engages in improvements or maintenance related to the public use of subject property (§ 1009, subd. (b); see *id.*, subd. (d)), and does not apply to coastal property (*id.*, subds. (e)–(g)). The provision also operates prospectively only, forbidding only reliance on post-1972 public use to support a claim of implied dedication. The statute, however, contains no indication that the Legislature intended for these alterations to apply differently to land used by the public for nonrecreational roadway purposes, as opposed to recreational purposes.

Plaintiffs also contend that the Legislature has acquiesced in judicial opinions interpreting section 1009 to concern only recreational use. Arguments based on supposed legislative acquiescence rarely do much to persuade. (See, e.g., *People v. Brown* (2012) 54 Cal.4th 314, 327–328.) Regardless, while "it may sometimes be true that legislative inaction signals acquiescence when there exists both a well-developed body of law interpreting a statutory provision and numerous amendments to a statute without altering the interpreted provision, that is not the case here." (*Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1156 (*Olson*).)

For one thing, plaintiffs fail to identify a "well-developed body of law." (*Olson*, *supra*, 42 Cal.4th at p. 1156.) Plaintiffs identify seven court opinions they

12

claim support their position, but they concede that two "never mention[]" section 1009, two more "found it unnecessary to consider the statute," and another found the statute "inapplicable because the plaintiff was seeking a prescriptive easement." Of the remaining two cases, one opined only in dictum on whether subdivision (b) of section 1009 reaches nonrecreational use. (See *Bustillos*, *supra*, 96 Cal.App.4th at pp. 1280–1281.) True, some of these cases nevertheless include language favorable to plaintiffs. (See *ibid.* ["The statute effectuates this purpose by providing that no recreational use of private property 'shall ever ripen to confer upon the public . . . a vested right to continue to make such use permanently' unless the property owner dedicates the land to public use and the dedication of property is accepted by the government," quoting § 1009, subd. (b)]; see also *Pulido*, *supra*, 234 Cal.App.4th at p. 1252 ["[T]he 'use of such property' refers back to subdivision (a)(1), which explains that the subject of the statute is the public recreational use of private real property."].) But plaintiffs point to only a single decision, rendered in 2004, that squarely addressed the question before us. (See *Hanshaw*, *supra*, 116 Cal.App.4th at p. 485.)

For another thing, section 1009 has not been the subject of "numerous amendments." (*Olson*, *supra*, 42 Cal.4th at p. 1156.) Indeed, section 1009 has not once been amended since it was first enacted in 1971. The fact that the Legislature has not passed legislation for the sole purpose of addressing the holdings (much less the dicta) of *Hanshaw*, *Bustillos*, or *Pulido* is not particularly telling. As we have often observed, " 'legislative inaction alone does not necessarily imply legislative approval.' " (*People v. Whitmer* (2014) 59 Cal.4th 733, 741.) Legislative inaction may instead reflect nothing more than " ' "the sheer pressure of other and more important business, political considerations, or a tendency to trust . . . the courts to correct their own errors." ' " (*Ibid*.) We cannot

13

here conclude from the Legislature's inaction that the Legislature has approved plaintiffs' preferred construction of section 1009, subdivision (b).

**B.**

Where statutory text "is unambiguous and provides a clear answer, we need go no further." (*Microsoft Corp. v. Franchise Tax Bd.* (2006) 39 Cal.4th 750, 758.) We observe, however, that the available legislative history and historical circumstances surrounding the enactment only buttress our reading of the statute. (See, e.g., *Equilon Enterprises*, *supra*, 29 Cal.4th at p. 61; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1119–1120.)

As all parties agree, section 1009 was enacted in response to this court's decision in *Gion*. The Legislature's response, it bears noting, was not simply to invalidate the decision wholesale. Rather, the Legislature affirmed certain aspects of the decision by, for example, recognizing the significance of active governmental participation in the maintenance of the property to determine whether an implied dedication has occurred. (§ 1009, subd. (d); see *Gion*, *supra*, 2 Cal.3d at p. 44.) The Legislature also endorsed *Gion*'s application of the law of implied dedication to open beach properties by not only affirming the law as applied in the coastal region, but making it *easier* to find implied dedication in the coastal region than elsewhere in the state. (Compare § 1009, subd. (b) with *id.*, subd. (e).) The scope of this response suggests that the Legislature was not narrowly focused on the particular circumstances at issue in *Gion*, but intended to take a more comprehensive look at the law of implied dedication on which the decision rested. The nature of the response to our decision also tends to undermine any argument that the Legislature intended to create an implicit exception for implied dedication of roadways. *Dietz* itself not only concerned dedication of a roadway (*Gion*, *supra*, 2 Cal.3d at pp. 36–38), but also held that "[t]he rules governing implied dedication apply with equal force . . . to land used

14

by the public for purposes other than as a roadway" (*id.* at pp. 41–42). Given this explicit discussion in the very opinion that prompted the Legislature to enact section 1009, it is hard to imagine that the Legislature intended to exempt roadways from the reach of that provision but simply declined to say so. (See also § 1009, subd. (e) [mentioning, in defining the coastal region, "the nearest public road or highway"].)[4]

As the Court of Appeal noted, the available legislative history materials bear the point out. The Court of Appeal took judicial notice of three documents of particular significance. The first is the Legislative Counsel's Digest, which advised that the legislation would "[p]rohibit[] *any use* of private land, except specified ocean frontage land, after effective date of act from conferring a vested right in public with specified exception for a public entity that makes visible improvement on such property . . . ." (Legis. Counsel's Dig., Sen. Bill. No. 504 (1971 Reg. Sess.) 3 Stats. 1971, Summary Dig., p. 136, italics added.) The second, the enrolled bill memorandum to the Governor, likewise advised that "[t]he bill . . . prohibits any use of private land, except specified ocean frontage land, after the effective date of the bill from conferring a vested right in the public, with specified exceptions." (Legis. Sec., Enrolled Bill Memorandum to Governor on Sen. Bill. No. 504 (1971 Reg. Sess.) Oct. 7, 1971, p. 1.) The third, an

---

[4]    An analysis by the Assembly Committee on Planning and Land Use discusses, regarding the earlier version of the legislation that became section 1009, whether the doctrine of implied dedication should be "delete[d]" or instead "controll[ed]." (Assem. Com. on Planning and Land Use, Analysis of Sen. Bill No. 504 (1971 Reg. Sess.) July 20, 1971, p. 2.) The analysis observes that "[t]he use of . . . implied dedication to control deceptive practices in subdivision sales (i.e. such as promised roads, etc.) may be an incidental benefit of the doctrine." (*Ibid.*) This further suggests that the Legislature was aware that the legislation could affect implied dedication of roadways.

15

Assembly committee analysis of proposed amendments advised that, if the amendments were included in the bill, "[t]he doctrine of implied dedication would be deleted prospectively except for [in] the 'coastal zone' . . . ." (Assem. Com. on Planning and Land Use, Analysis of Proposed Amendments to Sen. Bill No. 504 (1971 Reg. Sess.) July 20, 1971, p. 1.)

These materials are by no means dispositive. But we have treated similar materials as entitled to some weight. (See *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1170 [Legislative Counsel's summaries]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1399 [enrolled bill memorandum]; *Horiike v. Coldwell Banker Residential Brokerage Co.* (2016) 1 Cal.5th 1024, 1037 [Assembly Judiciary Committee bill analysis].) Plaintiffs, in any event, identify nothing in the legislative history that points in the other direction. In short, to the extent the legislative history is relevant to the analysis, it bolsters our conclusion that section 1009, subdivision (b) contains no implicit exception for nonrecreational use of roadways.[5]

---

[5] Accordingly, to the extent they are inconsistent with our opinion, we disapprove *Hanshaw v. Long Valley Road Assn.*, *supra*, 116 Cal.App.4th at pages 484–485; *Pulido v. Pereira*, *supra*, 234 Cal.App.4th at page 1252; and *Bustillos v. Murphy*, *supra*, 96 Cal.App.4th at pages 1280–1281.

## IV.

The judgment of the Court of Appeal is affirmed and the case remanded to the trial court for entry of judgment in favor of defendants.

**KRUGER, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Scher v. Burke

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 240 Cal.App.4th 381
**Rehearing Granted**

_____

**Opinion No.** S230104
**Date Filed:** June 15, 2017

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Malcolm H. Mackey

_____

**Counsel:**

Law Offices of Robert S. Gerstein, Robert S. Gerstein; Law Offices of Bennett Kerns and Bennett Kerns for Defendants and Appellants John F. Burke, Germaine Burke and Bennett Kerns.

Levinson Arshonsky & Kurtz, Richard I. Arshonsky, Jason J. Jarvis; Garrett & Tully, Ryan C. Squire, Zi C. Lin and Motunrayo D. Akinmurele for Defendants and Appellants Richard Erickson, Wendie Malick, Andrea D. Schroder and Richard B. Schroder.

Ferguson Case Orr Paterson, Wendy C. Lascher and Joshua S. Hopstone for Defendant and Appellant Gemma Marshall.

Damien M. Schiff, Anthony L. Francois and Julio N. Colomba for Pacific Legal Foundation, California Farm Bureau Federation and California Cattlemen's Association as Amici Curiae on behalf of Defendants and Appellants.

Cunningham & Treadwell, James H. Treadwell, Steven F. Kuehl; Aleshire & Wynder and June S. Ailin for Plaintiffs and Appellants.

Michael T. Whittington; Miller Starr Regalia, Arthur F. Coon and Kenneth R. Styles for Keri Mikkelson, Jerome Friesenhahn, Bryan Bell, Alison Bell, Scott Hudlow, Kirstin Hudlow, Todd Irvine, Kimberly Irvine, Terry Kloth, Margaret Kloth, John Dover, Georgia Wages, Janice Lundy, Ronald Lundy and John Farnsworth as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Robert S. Gerstein
Law Offices of Robert S. Gerstein
171 Pier Avenue, #322
Santa Monica, CA  90405-5363
(310) 820-1939

Ryan C. Squire
Garrett & Tully
225 South Lake Avenue, Suite 1400
Pasadena, CA  91101
(626) 577-9500

Joshua S. Hopstone
Ferguson Case Orr Paterson
1050 South Kimball Road
Ventura, CA  93004
(805) 659-6800

June S. Ailin
Aleshire & Wynder
2361 Rosecrans Avenue, Suite 475
El Segundo, CA  90245
(310) 527-6660