Filed 1/10/19

## CERTIFIED FOR PUBLICATION

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KERI MIKKELSEN et al., | F072990 |
| Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. S-1500-CV-280077) |
| v. | **OPINION** |
| MICHAEL HANSEN et al., | |
| Defendants, Cross-complainants and Appellants. | |
| KERI MIKKELSEN et al., | F073783 |
| Plaintiffs and Respondents, | |
| v. | |
| MICHAEL HANSEN et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Kern County.  David R. Lampe, Judge.

Darling & Wilson and Joshua G. Wilson; Law Office of Ray T. Mullen and Ray T. Mullen for Defendants, Cross-complainants and Appellants and Defendants and Appellants.

Miller Starr Regalia, Arthur F. Coon and Kenneth R. Styles; Michael T. Whittington for Plaintiffs, Cross-defendants and Respondents and Plaintiffs and Respondents.

-ooOoo-

## BACKGROUND

This is a consolidated appeal from a judgment and postjudgment order of the Kern County Superior Court.

Two cul-de-sacs in two separate Bakersfield subdivisions—Amberton and Stockdale Estates—are connected by a pedestrian path. The path's southern Amberton segment lies on a tract that was recorded in 1977 and previously owned and developed by Tenneco Realty Development Corporation (Tenneco). The path's northern Stockdale Estates segment lies on a tract that was recorded in 1981 and also previously owned and developed by Tenneco. In 1978, Tenneco expressly offered to dedicate the Amberton segment for public use. This offer was formally accepted by the City of Bakersfield. By contrast, there was neither an express offer to dedicate the Stockdale Estates segment nor a formal acceptance thereof.

Currently, the property on which the path's Stockdale Estates segment lies is owned by defendants/appellants Dan D. Hansen and Michael Hansen.[1] In June 2013, defendants erected a wall across the Stockdale Estates segment, obstructing access between the subdivisions. Plaintiffs/respondents, a group of current and former Amberton residents,[2] asked the superior court to enjoin defendants from impeding public use of the path. They argued a common law dedication of the Stockdale Estates segment

---

[1]    Dan and Michael are father and son, respectively.

[2]    Keri Mikkelsen; Jenny Friesenhahn; Jerome Friesenhahn; Bryan Bell; Alison Bell; Scott Hudlow; Kristin Hudlow; Todd Irvine; Kimberly Irvine; Terry Kloth; Margaret Kloth; John Dover; Georgia Wages; Janice Lundy; Ronald Lundy; and John Farnsworth.

was both implied in fact and implied in law. Defendants countered Civil Code section 1009, subdivision (b),[3] prohibited both types of implied dedications.

Following a bench trial, the superior court sided with plaintiffs, issued a permanent injunction, and instructed defendants to remove the wall. The court found an implied-in-fact dedication based on evidence Tenneco "intended to dedicate the [Stockdale Estates segment] as a public pedestrian easement in the same manner as it did the Amberton [segment]" and "people were regularly traversing . . . the Stockdale Estates [segment] at the same time . . . the . . . Amberton [segment] was established and continuously thereafter." The court also found an implied-in-law dedication based on evidence of "decades of . . . continuous public use." Regarding defendants' claim, the court concluded section 1009, subdivision (b), "is applicable only to recreational use" or, "if applicable at all, may limit an implied-in-law determination, but not an implied-in-fact determination which depends upon a finding of the intent of the owner." After entry of judgment, plaintiffs moved for attorneys' fees pursuant to Code of Civil Procedure section 1021.5. The court granted the motion and awarded $75,000.

During the pendency of this appeal, the California Supreme Court ruled section 1009, subdivision (b), prohibits "reliance on post-1972 public use to support a claim of implied dedication" (*Scher v. Burke* (2017) 3 Cal.5th 136, 147 (*Scher*)) and "does not distinguish between recreational use and nonrecreational use" (*id*. at p. 144).

The parties agree *Scher* abrogated the superior court's finding of an implied-in-law dedication. However, plaintiffs assert the judgment must be upheld because section 1009, subdivision (b), in general, does not bar implied-in-fact dedications of private noncoastal property. Defendants contend otherwise. For the reasons set forth below, we

---

**3**      Unless otherwise indicated, subsequent statutory citations refer to the Civil Code.

side with defendants and reverse both the judgment and the postjudgment order awarding plaintiffs attorneys' fees.[4]

## DISCUSSION

**I.      Section 1009, subdivision (b), generally prohibits implied-in-fact dedications of private noncoastal property.**

a.  *Relevant law*.

i.  Common law dedications.

"A 'dedication' is an uncompensated transfer of an interest in private property to the public . . . ." (*Friends of Hastain Trail v. Coldwater Development LLC* (2016) 1 Cal.App.5th 1013, 1027; accord, *Scher*, *supra*, 3 Cal.5th at p. 141.)  "Dedications may occur pursuant to statute or the common law." (*Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 820 (*Blasius*).)

"Under the common law, a dedication may be made either expressly or by implication." (*Scher*, *supra*, 3 Cal.5th at p. 141.)  "Express dedication arises where the owner's intent to dedicate is manifested in the overt acts of the owner, e.g., by execution of a deed.  An implied dedication arises when the evidence supports an attribution of intent to dedicate without the presence of such acts." (*Blasius*, *supra*, 78 Cal.App.4th at p. 821.)  "Common law dedication, whether express or implied, requires both an offer of dedication and an acceptance of that offer by the public." (*Scher*, *supra*, at p. 141; see *County of Inyo v. Given* (1920) 183 Cal. 415, 419 (*Given*) ["Dedication is the joint effect of an offer by the owner to dedicate land and an acceptance of such offer."].)  "A dedication without acceptance is, in law, merely an offer to dedicate, and such offer does not impose any burdens nor confer any rights, unless there is an acceptance.  The rule therefore is, that acceptance on the part of the public is necessary to a valid dedication . . . ." (*Given*, *supra*, at pp. 418-419.)  "The acceptance may be actual or implied.  It is

---

[4]      In light of our disposition, we need not address the parties' remaining contentions.

actual when formal acceptance is made by the proper authorities, and implied, when a use has been made of the property by the public for such a length of time as will evidence an intention to accept the dedication." (*Id.* at p. 418; accord, *id.* at p. 420 ["An acceptance must be had either by user or by some formal act."].)

"An implied in fact dedication is to be distinguished from a dedication implied in law." (*Cherokee Valley Farms, Inc. v. Summerville Elementary School Dist.* (1973) 30 Cal.App.3d 579, 585.) "A dedication is implied in fact when the period of public use is less than the period for prescription[, i.e., five years,] and the acts or omissions of the owner afford an implication of actual consent or acquiescence to dedication." (*Blasius*, *supra*, 78 Cal.App.4th at p. 821; accord, *Schwerdtle v. County of Placer* (1895) 108 Cal. 589, 593 (*Schwerdtle*).) "[W]here this actual consent and acquiescence can be proved, then the length of time of the public use ceases to be of any importance, because the offer to dedicate, and the acceptance by use, both being shown, the rights of the public have immediately vested." (*Schwerdtle*, *supra*, at p. 593.) "A dedication is implied [in] law when the public use is adverse and exceeds the period for prescription." (*Blasius*, *supra*, at p. 821, italics omitted.) This protracted adverse use "establishes against the owner the conclusive presumption of consent, and so of dedication. It affords the conclusive and indisputable presumption of knowledge and acquiescence, while at the same time it negatives the idea of a mere license." (*Schwerdtle*, *supra*, at p. 593.)

   ii. <u>Section 1009</u>.

The Legislature enacted section 1009 on March 4, 1972. (*Friends of Hastain Trail v. Coldwater Development LLC*, *supra*, 1 Cal.App.5th at p. 1028; see *Blasius*, *supra*, 78 Cal.App.4th at pp. 822-824 & fn. 2.) Subdivision (f), of section 1009, which applies to private coastal properties, reads:

> "No use, subsequent to the effective date of this section, by the public of [coastal] property . . . shall constitute evidence or be admissible as evidence that the public or any governmental body or unit has any right in such property by implied dedication if the owner does any of the following

5.

actions:  [¶]  (1) Posts signs, as provided in [s]ection 1008 . . . .  [¶]
(2) Records a notice as provided in [s]ection 813.  [¶]  (3) Enters into a
written agreement with any federal, state, or local agency providing for the
public use of such land."

On the other hand, subdivision (b), which applies to private noncoastal properties, reads:

"Regardless of whether or not a private owner of real property has
recorded a notice of consent to use of any particular property pursuant to
[s]ection 813 . . . or has posted signs on such property pursuant to [s]ection
1008 . . . , except as otherwise provided in subdivision (d),[5] no use of such
property by the public after the effective date of this section shall ever ripen
to confer upon the public or any governmental body or unit a vested right to
continue to make such use permanently, in the absence of an express
written irrevocable offer of dedication of such property to such use, made
by the owner thereof in the manner prescribed in subdivision (c) of this
section, which has been accepted by the county, city, or other public body
to which the offer of dedication was made, in the manner set forth in
subdivision (c).[6]"

---

**5**     Section 1009, subdivision (d), reads:

"Where a governmental entity is using private lands by an
expenditure of public funds on visible improvements on or across such
lands or on the cleaning or maintenance related to the public use of such
lands in such a manner so that the owner knows or should know that the
public is making such use of his land, such use, including any public use
reasonably related to the purposes of such improvement, in the absence of
either express permission by the owner to continue such use or the taking
by the owner of reasonable steps to enjoin, remove or prohibit such use,
shall after five years ripen to confer upon the governmental entity a vested
right to continue such use."

This exception is not germane to the instant case.

**6**     Section 1009, subdivision (c), reads:

6.

iii.   The *Scher* case.

Recently, our Supreme Court addressed whether section 1009, subdivision (b),
"applies to nonrecreational use . . . as it applies to recreational use of other private
noncoastal property." (*Scher*, *supra*, 3 Cal.5th at p. 143.)  In *Scher*, the defendants
blocked vehicular access to two roads passing through their lands. (*Id.* at p. 140.)  The
plaintiffs argued the defendants or their predecessors in interest previously acquiesced to
the dedication of these roads for public use. (*Ibid.*)  The trial court agreed with the
plaintiffs, finding (1) an offer to dedicate was implied in fact and implied in law (*ibid.*);
and (2) "[t]hese offers of dedication . . . had been 'accepted by the public['s] use of the
property' " (*ibid.*, fn. omitted).  The trial court also concluded section 1009,
subdivision (b), " 'does not restrict the implied dedication of public roads for
nonrecreational uses.' " (*Scher*, *supra*, at p. 140.)  The appellate court reversed, holding
"section 1009, subdivision (b) unambiguously 'bars *all* public use, not just recreational

---

"In addition to any procedure authorized by law and not prohibited
by this section, an irrevocable offer of dedication may be made in the
manner prescribed in Section 7050 of the Government Code to any county,
city, or other public body, and may be accepted or terminated, in the
manner prescribed in that section, by the county board of supervisors in the
case of an offer of dedication to the county, by the city council in the case
of an offer of dedication to a city, or by the governing board of any other
public body in the case of an offer of dedication to such body."

In turn, Government Code section 7050 reads in part:

"With the consent of the city, county, or city and county, as the case
may be, an irrevocable offer of dedication of real property for any public
purpose . . . may be made pursuant to this section.  Such offer of dedication
shall be executed, acknowledged, and recorded in the same manner as a
conveyance of real property.  Such offer of dedication, when recorded in
the office of the county recorder, shall be irrevocable and may be accepted
at any time by the city council of the city within which such real property is
located at the time of acceptance or, if located in unincorporated territory,
by the board of supervisors of the county within which such real property is
located."

use, from developing into an implied public dedication' " (*Scher*, *supra*, at p. 140) and deeming "evidence of post-1972 use of the roadways . . . inadmissible" (*ibid.*).

The Supreme Court affirmed the appellate court's judgment. (*Scher*, *supra*, 3 Cal.5th at p. 150.) The high court examined the plain language of section 1009, subdivision (b) (*Scher*, *supra*, at pp. 143-144) and emphasized the provision "is written in categorical terms: '*no use*' of the subject property after March 1972 'shall ever ripen' into an implied dedication of the property to the public" (*id.* at p. 144). In other words, this prohibition on "reliance on post-1972 public use to support a claim of implied dedication" (*id.* at p. 147) "does not distinguish between recreational use and nonrecreational use" (*id.* at p. 144). The high court's holding "do[es] not address any questions about the proper application of section 1009, subdivision (b) to a claim that an implied offer to dedicate a roadway was accepted by public use." (*Id.* at p. 141, fn. 2.)

b. *Analysis*.

In view of *Scher*, plaintiffs concede section 1009, subdivision (b), proscribes implied-in-law dedications of private noncoastal property. Nonetheless, they contend this provision does not apply to implied-in-fact dedications. The issue before us is therefore one of statutory interpretation. " 'Questions of statutory interpretation . . . present questions of law, which we review de novo.' [Citation.] 'Because the interpretation and application of a statute are questions of law, an appellate court is not bound by the trial judge's interpretation.' [Citation.] Instead, 'we undertake our own interpretation of the determinative statute and assess any claims raised by the parties completely anew.' [Citation.]" (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 265-266 (*Cal. State Fresno*).)

" 'In ascertaining the meaning of a statute, we look to the intent of the Legislature as expressed by the actual words of the statute' [citation], 'giving them a plain and commonsense meaning' [citation]. 'We examine the language first, as it is the language of the statute itself that has "successfully braved the legislative gauntlet." [Citation.] "It

8.

is that [statutory] language which has been lobbied for, lobbied against, studied, proposed, drafted, restudied, redrafted, voted on in committee, amended, reamended, analyzed, reanalyzed, voted on by two houses of the Legislature, sent to a conference committee, and, after perhaps more lobbying, debate and analysis, finally signed 'into law' by the Governor. The same care and scrutiny does not befall the committee reports, caucus analyses, authors' statements, legislative counsel digests and other documents which make up a statute's 'legislative history.' " [Citation.]' [Citation.]" (*Cal. State Fresno*, *supra*, 9 Cal.App.5th at p. 266.)

To reiterate, subdivision (b) of section 1009 provides in pertinent part:

> "[N]o use . . . by the public . . . shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently, in the absence of an express written irrevocable offer of dedication of such property to such use, made by the owner thereof . . . , which has been accepted by the county, city, or other public body to which the offer of dedication was made . . . ."

As noted, a common law dedication "requires both an offer of dedication and an acceptance of that offer by the public." (*Scher*, *supra*, 3 Cal.5th at p. 141.) An offer may be either express, i.e., "where the owner's intent to dedicate is manifested in [his or her] overt acts" (*Blasius*, *supra*, 78 Cal.App.4th at p. 821), or implied, i.e., "when the evidence supports an attribution of intent to dedicate without the presence of such [overt] acts" (*ibid.*). Acceptance may be either "actual," i.e., "when formal acceptance is made by the proper authorities" (*Given*, *supra*, 183 Cal. at p. 418) or "implied," i.e., "when a use has been made of the property by the public for such a length of time as will evidence an intention to accept the dedication" (*ibid.*). The plain language of section 1009, subdivision (b), indicates any post-1972 dedication of noncoastal property requires an "express written irrevocable offer of dedication of [the] property to [public] use" by the

9.

owner[7] and acceptance of said offer "by the county, city, or other public body to which [said] offer . . . was made" in a prescribed manner (see *ante*, fn. 5); public use alone, though a proper mode of acceptance at common law, can never "ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently." Naturally, section 1009, subdivision (b), forecloses implied-in-fact dedications since, by definition, such dedications only arise where an express offer is lacking and call for acceptance by public use. (See *Schwerdtle*, *supra*, 108 Cal. at p. 593; *Blasius*, *supra*, 78 Cal.App.4th at p. 821.)

On appeal, plaintiffs argue "the express language of Section 1009[, subdivision ](b) does not apply to 'implied in fact' dedications" because "[t]he word 'ripen' is a legal term of art that, in real property law, is used exclusively in the context of prescriptive rights, including prescriptive easements and adverse possession," meaning the prohibited "vested right" necessarily refers to "a public prescriptive right." We disagree.

The adjective "**ripe**" simply means "[f]ully matured; ready; in proper condition." (Ballentine's Law Dictionary (3d ed. 1969) p. 1122.) Logically, the verb "**ripen**" means "[t]o make or become ripe or riper; mature." (American Heritage Dict. (3d college ed. 2000) p. 1177; see, e.g., Black's Law Dict. (5th ed. 1979) p. 1192 ["**Ripeness doctrine.** The constitutional mandate of case or controversy . . . requires an appellate court to consider whether a case has *matured or ripened* into a controversy worthy of adjudication before it will determine the same." (italics added)].) Exactly *what* something ripens into varies. For example, section 1006 (enacted by Stats. 1872, amended by Stats. 1915, ch. 554, § 1, & Stats. 1980, ch. 44, § 1) provides:

> "Occupancy for any period confers a title sufficient against all except the state and those who have title by prescription, accession, transfer, will, or succession; but the title conferred by occupancy is not a

---

[7] Curiously, plaintiffs insist section 1009, subdivision (b), is "*silent* on the issue of an owner's implied intent to dedicate property to the public." (Italics added.)

sufficient interest in real property to enable the occupant or the occupant's privies to commence or maintain an action to quiet title, unless the occupancy has *ripened into title by prescription*."**8** (Italics added.)

Section 1007 (enacted by Stats. 1872, amended by Stats. 1935, ch. 519, § 1, & Stats. 1968, ch. 1112, § 1) provides:

> "Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar any action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all, but no possession by any person, firm or corporation no matter how long continued of any land, water, water right, easement, or other property whatsoever dedicated to a public use by a public utility, or dedicated to or owned by the state or any public entity, shall ever *ripen into any title, interest or right against the owner thereof*." (Italics added.)

Lastly, section 1008 (added by Stats. 1965, ch. 926, § 1) provides:

> "No use by any person or persons, no matter how long continued, of any land, shall ever *ripen into an easement by prescription*, if the owner of such property posts at each entrance to the property or at intervals of not more than 200 feet along the boundary a sign reading substantially as follows: 'Right to pass by permission, and subject to control, of owner: Section 1008, Civil Code.' " (Italics added.)

The "what" set forth in section 1009, subdivision (b), is "a vested right to continue to make [public] use [of private noncoastal property] permanently." Contrary to plaintiffs' stance, the breadth of this wording covers implied-in-fact dedications. As our Supreme Court articulated more than a century ago regarding such dedications, upon the showing of a private owner's consent or acquiescence to "*public use*," "the *rights* of the

---

**8**     Prior to the 1980 amendment, section 1006 similarly read:

> "Occupancy for any period confers a title sufficient against all except the state and those who have title by prescription, accession, transfer, will or succession; provided, however, that the title conferred by such occupancy shall not be a sufficient interest in real property to enable the occupant or his privies to commence or maintain an action to quiet title under the provisions of section seven hundred thirty-eight of the Code of Civil Procedure of this state, unless such occupancy shall have *ripened into title by prescription*." (Italics added.)

11.

public have immediately *vested*." (*Schwerdtle*, *supra*, 108 Cal. at p. 593, italics added.) If the Legislature sought to limit the scope of section 1009, subdivision (b), to implied-in-law dedications, it could have employed more specific language to that effect, comparable to what we observe in sections 1006 through 1008. Given these provisions antedated section 1009, the Legislature certainly had templates at its disposal. That it chose to utilize more sweeping language is telling. (See *Scher*, *supra*, 3 Cal.5th at pp. 144-145 ["As a general rule, when the Legislature uses a term in one provision of a statute but omits it from another . . . we generally presume that the Legislature did so deliberately, in order ' "to convey a different meaning." ' "].)

Moreover, plaintiffs would have us ignore the remaining text of section 1009, subdivision (b), i.e., "in the absence of an express written irrevocable offer of dedication of [private noncoastal] property to [public] use, made by the owner thereof . . . , which has been accepted by the county, city, or other public body to which the offer of dedication was made . . . ." "[E]very part of a statute serves a purpose . . . [;] nothing is superfluous." (*In re J.W.* (2002) 29 Cal.4th 200, 209.) Because plaintiffs' interpretation renders nugatory an essential piece of section 1009, subdivision (b), it must be avoided. (See *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 659; *In re J.B.* (2009) 178 Cal.App.4th 751, 756.)

Finally, plaintiffs contend the legislative history supports their interpretation of section 1009, subdivision (b). "Where statutory text 'is unambiguous and provides a clear answer, we need go no further.' [Citation.]" (*Scher*, *supra*, 3 Cal.5th at p. 148.)[9] " 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citation.] 'When statutory language is clear and unambiguous there is no need for construction, and we will not indulge in it.'

---

**9** We had deferred plaintiffs' and defendants' separate requests for judicial notice of legislative history pending consideration of this appeal on its merits. In light of our disposition, we deny these requests.

[Citations.]  'We will not speculate that the Legislature meant something other than what it said.  Nor will we rewrite a statute to posit an unexpressed intent.'  [Citations.]"  (*Cal. State Fresno*, *supra*, 9 Cal.App.5th at p. 266.)

## II.    The superior court's order awarding plaintiffs attorneys' fees pursuant to Code of Civil Procedure section 1021.5 must be reversed.

"Upon motion, a court may award attorneys' fees to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest . . . ."  (Code Civ. Proc., § 1021.5; accord, *Vasquez v. State of California* (2008) 45 Cal.4th 243, 250.)  "A court may award attorney fees . . . only if the statute's requirements are satisfied.  Thus, a court may award fees only to 'a successful party' . . . . [Citation.]"  (*Vasquez v. State of California*, *supra*, at pp. 250-251.)

Since we reverse the superior court's judgment, plaintiffs are no longer "successful" parties.  Accordingly, the court's postjudgment order awarding attorneys' fees must also be reversed.  (See, e.g., *Samples v. Brown* (2007) 146 Cal.App.4th 787, 811; *Woodbury v. Brown-Dempsey* (2003) 108 Cal.App.4th 421, 439.)

## DISPOSITION

The judgment and postjudgment order are reversed.  Costs on appeal are awarded to defendants/appellants Michael Hansen and Dan D. Hansen.

_____
DETJEN, Acting P.J.

WE CONCUR:

_____
PEÑA, J.

_____
SNAUFFER, J.