Filed 11/14/22; ordered published 12/6/22 (order attached)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

MELISSA BETH SALMON,

    Respondent,

v.

STEPHEN SALMON,

    Appellant.

E075748

(Super.Ct.No. DVHE1906683)

OPINION

APPEAL from the Superior Court of Riverside County.  James T. Warren, Judge.
Affirmed.

Stephen Salmon, in pro. per.; Westover Law Group and Andrew L. Westover for
Appellant.

Steven S. Kondo for Respondent.

1

## I.  INTRODUCTION

Stephen Salmon (Husband) and Melissa Beth Salmon (Wife) filed competing requests for domestic violence restraining orders against each other pursuant to the Domestic Violence Prevention Act (DVPA).  (Fam. Code, § 6200 et seq.)[1]  The trial court held a joint hearing on both petitions that included live witness testimony presented over the course of multiple days.  At the conclusion of the hearing, the trial court issued an order granting Wife's petition and denying Husband's petition.  Husband appeals from this order.

On appeal, Husband does not challenge the sufficiency of the evidence to support the trial court's factual findings or to support the issuance of a DVPA restraining order in favor of Wife.  Instead, he challenges only the trial court's denial of his petition, arguing (1) the trial court misunderstood the scope of its discretion to the extent it believed section 6305 constrained its authority to simultaneously grant both requests for protective orders in this case; (2) even if section 6305 applies, the trial court abused its discretion by choosing between two identified aggressors in order to grant relief to only one of them; and (3) the trial court abused its discretion by failing to grant Husband's request for custody of the parties' children.

We conclude that section 6305 does govern the parties' competing requests for protective orders; the statute expressly permits the trial court to weigh the acts of the parties to determine if one should be considered the dominant aggressor before issuing a

_____

[1]  Undesignated statutory references are to the Family Code.

2

mutual restraining order; and the trial court did not abuse its discretion in denying Husband's custody request. As such, we affirm the order.

## II. PROCEDURAL HISTORY

On October 30, 2019, Wife filed a petition seeking a domestic violence restraining order against Husband. Wife alleged that on October 28, Husband had attempted to physically discipline one of their children with a belt; Wife had attempted to intervene; and Husband physically battered Wife as a result. Police eventually arrived at the scene and arrested Husband for domestic violence.

On November 27, 2019, Husband filed his own petition seeking a domestic violence restraining order against Wife. With respect to the October 28, 2019 incident, Husband alleged that Wife had initiated the conflict, and he only struck Wife accidentally when acting in self-defense. Husband also alleged that Wife had committed various acts of physical abuse in the past, with the most recent act of abuse occurring in April 2019. In addition to his request for a DVPA restraining order to protect himself, Husband also requested the trial court make an order awarding him sole legal and physical custody of the parties' four minor children.

The trial court held a hearing on both petitions that included live witness testimony presented over the course of multiple days. At the conclusion of the hearing, the trial court granted Wife's petition and denied Husband's petition. In a written minute order, the trial court made the following findings: (1) Husband was the primary aggressor with respect to the October 28, 2019 incident; (2) Wife was the primary aggressor with respect to the alleged April 2019 incident; (3) Wife had previously

3

inflicted injuries to the parties' minor children that would qualify for a presumption under section 3044; (4) Husband was "grossly derelict" in permitting corporal punishment by Wife against their children; and (5) Husband was "grossly negligent" for leaving loaded firearms in the home accessible to the parties' children.

Other than setting forth findings of fact, the written order did not explain the reasons for the trial court's decision. However, the trial court provided an oral explanation of its reasons on the record at the hearing. The trial court explained that its findings meant that both Husband and Wife had committed acts of domestic violence within the meaning of section 3044; that while Wife had inflicted unnecessary and inappropriate injuries to the children, Husband had also failed to protect the children from this alleged abuse; and that the trial court believed Husband to be "the primary aggressor in this case," notwithstanding the fact that Wife had also committed acts of abuse in the past.

## III. DISCUSSION

A. *General Legal Principles and Standard of Review*

"Pursuant to the Domestic Violence Prevention Act (DVPA) (§ 6200 et seq.), a court may issue a protective order to restrain any person for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved." (*S.M. v. E.P.* (2010) 184 Cal.App.4th 1249, 1264.) The trial court may issue such an order " 'if the party seeking the order "shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." ' " (*K.L. v. R.H.* (2021) 70 Cal.App.5th 965, 977 (*K.L.*).) A trial court is also empowered to make visitation or custody orders in

4

conjunction with a DVPA restraining order. (§ 6323 [custody orders authorized on ex parte basis upon showing of immediate harm to child]; § 6340 [custody orders authorized after notice and hearing].)

However, the statutory scheme also constrains the trial court's ability to issue a mutual protective order. Section 6305 provides that "the court shall not issue a mutual order enjoining the parties from specific acts of abuse" unless it makes "detailed findings of fact indicating that both parties acted as a primary aggressor and that neither party acted primarily in self-defense." (*Id*. at subd. (a).) "[I]n determining if both parties acted primarily as aggressors, the court shall consider the provisions concerning dominant aggressors set forth in [Penal Code section 836, subdivision (c)(3)]." (§ 6305, subd. (b).) In turn, Penal Code section 836, subdivision (c)(3), explains that "[t]he dominant aggressor is the person determined to be the most significant, rather than the first, aggressor" and specifies various factors to consider in making such a determination, including: "(A) the intent of the law to protect victims of domestic violence from continuing abuse, (B) the threats creating fear of physical injury, (C) the history of domestic violence between the persons involved, and (D) whether either person involved acted in self-defense." (Pen. Code, § 836, subd. (c)(3).)

"We review DVPA orders [citation] and custody and visitation orders [citation] for abuse of discretion." (*K.L.*, *supra*, 70 Cal.App.5th at p. 979.) However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) Thus, " ' "[t]he question of 'whether a trial court applied the

5

correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.' " ' " (*K.L.*, at p. 979; see *In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 116 [" 'The question of whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law [citation] requiring de novo review.' "].)  "[T]o the extent we are called upon to review the court's factual findings, we apply the substantial evidence standard of review." (*Curcio v. Pels* (2020) 47 Cal.App.5th 1, 12; see *K.L.*, at p. 979.)  Finally, with respect to the trial court's application of the law to the facts, " '[a]n abuse of discretion occurs when the ruling exceeds the bounds of reason.' " (*Perez v. Torres-Hernandez* (2016) 1 Cal.App.5th 389, 396; see *In re Marriage of G.* (2017) 11 Cal.App.5th 773, 780.)

In this appeal, Husband expressly concedes the evidence is sufficient to support the trial court's factual findings.  Thus, the only questions presented involve whether the trial court applied the correct legal standard, which we review de novo, and whether the trial court's application of the law to the undisputed facts exceeded the bounds of reason.  As we explain, we find no abuse of discretion on this record.

B. *Section 6305 Governs the Granting of Separate Orders That Have the Effect of a Mutual Protective Order*

Husband's primary contention on appeal is that section 6305 does not apply when two competing petitions allege different incidents of domestic violence as the basis for seeking a protective order under the DVPA.  Husband believes that in such cases "each petition for protection must be determined on its own merits and independent of the other," regardless of whether the petitions are heard separately or together.  Thus,

according to Husband, the trial court misunderstood the scope of its discretion to the extent it believed section 6305 constrained its ability to grant both Husband's and Wife's competing petitions in this case.

We acknowledge that the limited published decisions addressing this point are divided. In *Conness v. Satram* (2004) 122 Cal.App.4th 197 (*Conness*), the First Appellate District concluded two orders entered close in time to each other, but following separate hearings on different days, did not fall under the definition of a mutual order for purposes of section 6305, despite the fact the orders together resulted in a restraining order in favor of each party to the dispute. (*Id.* at pp. 202-205.) However, more recently, in *Melissa G. v. Raymond M.* (2018) 27 Cal.App.5th 360 (*Melissa G.*), the Second Appellate District held that, "[a]s used in section 6305, the phrase 'mutual order' may refer to a single order restraining two opposing parties . . . or two separate orders which together accomplish the same result as a single order." (*Id.* at p. 368.) Husband contends that *Melissa G.* was wrongly decided. For the reasons we set forth below, we disagree.

First, it is a codified maxim of jurisprudence that "[t]he law respects form less than substance." (Civ. Code, § 3528.) Thus, "[o]n appeal, the substance and effect of the order controls, not its label." (*Brown v. Wells Fargo Bank*, *NA* (2012) 204 Cal.App.4th 1353, 1356; *Gaines v. Fidelity National Title Ins. Co.* (2016) 62 Cal.4th 1081, 1092-1094 ["The label the trial court uses is not dispositive of the inquiry," and the reviewing court will look to the functional nature of an order to determine whether a statute applies].) In our view, this consideration strongly weighs in favor of the interpretation adopted in *Melissa G.* Two separate orders that collectively accomplish the same result as a single

mutual restraining order are the functional equivalent of a mutual restraining order. To declare that two separate orders cannot constitute a "mutual restraining order" under these circumstances would require us to ignore their substantive, legal effect on the rights of the parties in favor of their form or label.

Second, " ' "[t]he fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law," ' " and " ' " ' "we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute . . . ." ' " ' " ' " (*Carrasco v. State Personnel Bd.* (2021) 70 Cal.App.5th 117, 139; *Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645.) It is undisputed that one of the primary purposes of section 6305 is to "hel[p] ensure that a mutual order is the product of the careful evaluation of a thorough record and not simply the result of the moving party yielding to the other party's importunities or the court deciding that a mutual order is an expedient response to joint claims of abuse." (*Conness*, *supra*, 122 Cal.App.4th 197 at p. 204; *Melissa G.*, *supra*, 27 Cal.App.5th at p. 369.) In our view, the interpretation adopted in *Melissa G.* most effectively promotes this legislative purpose. It would ensure that the trial court engages in the contemplated "careful evaluation of a thorough record" in all cases in which parties have competing petitions seeking DVPA restraining orders; whereas the contrary view would permit a trial court or a party to avoid the required analysis simply by calendaring or noticing competing petitions for separate hearings. We fail to see how the recognized legislative purpose of section 6305 would be advanced by an interpretation that permits the parties or trial court

8

to avoid the higher evidentiary burden simply through fortuitous calendaring choices by the clerk's office or intentional or unintentional scheduling of hearings on each party's request for DVPA restraining orders on different dates or times.

Third, we find no support in the statute or case authority for Husband's suggestion that the Legislature intended section 6305 to apply only in situations where the parties seek competing restraining orders based upon the same alleged incident of domestic violence. The DVPA expressly contemplates that a single restraining order may be based upon multiple acts of abuse. (§ 6300, subd. (a) [authorizing an order to issue based upon "reasonable proof of a past act or acts of abuse"].) More importantly, the provision of the Penal Code that was expressly incorporated into section 6305, states that the trial court should consider "the history of domestic violence between the persons involved" in determining which party should be deemed the primary or dominant aggressor. (Pen. Code, § 836, subd. (c)(3).) This provision would be rendered entirely superfluous if section 6305 was intended to apply only to situations in which a single incident of domestic violence is alleged in two separate petitions. " 'An interpretation that renders statutory language a nullity is obviously to be avoided.' " (*Toulumne Jobs & Small Business Alliance v. Superior Court* (2014) 59 Cal.4th 1029, 1039; *Scher v. Burke* (2017) 3 Cal.5th 136, 146 ["we ordinarily construe enactments to avoid rendering any provision superfluous"].) Thus, we decline to adopt Husband's interpretation here.[2]

---

[2] We also note that Husband's position on appeal overlooks the fact that his petition expressly sought a DVPA restraining order based upon the same incident alleged as the basis for Wife's petition. In closing arguments, Husband expressly conceded that

*[footnote continued on next page]*

Finally, we do not believe that our interpretation of section 6305 creates the hypothetical procedural conflicts suggested by Husband or the Court of Appeal in *Conness*, *supra*, 122 Cal.App.4th 197.  Husband argues that we should avoid an interpretation of the statute that results in disparate treatment of similarly situated litigants.  We agree, but we believe it is Husband's interpretation that creates the potential for this result.  Under Husband's interpretation, one party could simply wait for the issuance of an order on the opposing party's petition, immediately file a new petition against the opposing party, and effectively achieve the same result as a mutual restraining order without being subject to the same level of scrutiny as if the petitions had been heard together.  In contrast, holding that competing petitions for DVPA restraining orders must be subject to section 6305, regardless of whether they are heard together or separately ensures that in every case the same standard is applied regardless of how the trial court calendars the matter in any given case.

We also respectfully disagree with our colleagues in *Conness* that requiring compliance with section 6305, even where petitions are heard separately, creates a "procedural snarl" that trial courts are not equipped to unravel.  (*Conness*, *supra*, 122 Cal.App.4th at p. 203.)  The Court of Appeal in *Conness* hypothesized that a party who had already obtained a restraining order could "thwart [the opposing party's] effort

the most recent incident of alleged abuse upon which both petitions were based was the October 28, 2019 incident.  Thus, even if we agreed with Husband's interpretation of section 6305, the trial court would still have been required to conduct an analysis under section 6305, and its discussion of which party should be considered the "primary aggressor" would not suggest an erroneous application of the law.

10

to obtain a second, 'mutual,' order by the simple expedient of failing to appear"; that a trial court would have difficulty retroactively applying section 6305 to an order that had already been issued; or that difficulties might arise when a subsequent petition is filed in a different county. (*Conness*, at pp. 202-203.) However, we believe the trial court is well equipped to deal with any such concerns.

DVPA restraining orders are not permanent orders. Instead, they are "subject to termination or modification by further order of the court," either upon stipulation or after a noticed hearing (§ 6345, subds. (a), (d)); and, such a termination or modification is proper "upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted . . . or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order" (Code Civ. Proc., § 533; *Loeffler v. Medina* (2009) 174 Cal.App.4th 1495, 1503-1504 [Code of Civil Procedure section 533 applies to the dissolution or modification of DVPA restraining orders.]). Moreover, when petitioning for a DVPA restraining order, a party is required to disclose the existence of any other restraining orders currently in place as well as any other court cases involving the parties (Jud. Council Form DV-100).

Thus, to the extent a DVPA restraining order has already been issued in favor of one party, the trial court need not do any more than provide notice that the hearing on the subsequently filed petition will also address modification or termination of that prior order to avoid the perceived procedural hurdles envisioned in *Conness*, *supra*, 122 Cal.App.4th 197. At the hearing, the trial court can then evaluate the competing

11

petitions under section 6305 and, if necessary, terminate a prior order, issue a new mutual restraining order, and make the necessary findings of fact in support of such an order. Notice of the intent to consider modification or termination of the prior order also seems sufficient to dissuade any party from willingly refusing to appear. While it is true that the failure of one party to appear would prevent the issuance of a mutual restraining order, the absent party would risk termination of any prior order and issuance of a new order in favor of the opposing party. (§ 6345, subd. (d).) Under such circumstances, the incentive for a party to attempt to hold the proceedings hostage by refusing to appear would seem minimal.

Finally, to the extent a prior DVPA restraining order has already been issued by a trial court in a different county, the trial court is already empowered to issue an order to show cause why the matter should not be transferred to the court that issued the original order. (*Williams v. Superior Court* (1989) 216 Cal.App.3d 378, 386 [trial court may order transfer of action after "a noticed motion or order to show cause"].) While transfer of the cause to a different county may represent an inconvenience to the subsequent petitioner, it represents no greater inconvenience than that imposed by the DVPA's provisions for renewal of orders. (§ 6345 [providing for renewal of protective order after noticed motion].)

For the above reasons, we agree with *Melissa G.* that section 6305 should apply to all cases in which parties present competing petitions for DVPA restraining orders, regardless of when the petitions are filed or calendared for hearing. Interpreting the statute in this manner promotes the legislative purpose of section 3605 by ensuring that

12

mutual restraining orders are not issued absent the careful scrutiny envisioned by the Legislature; ensuring that all parties similarly situated have their requests evaluated under the same standards; and avoiding the very conflicts identified by Husband that might arise as the result of different methods of calendaring used by different courts. Thus, we find no error in the trial court's application of the law to the extent it believed it was constrained by the provisions of section 6305 in this case.

C. *Section 6305 Permits the Trial Court to Designate One Party the Dominant Aggressor*

Alternatively, Husband argues that, even if section 6305 applies, the trial court abused its discretion in applying the statute. In making this argument, Husband does not challenge the trial court's factual findings or the sufficiency of those findings to support granting a DVPA restraining order in favor of Wife. Instead, Husband only argues that under section 6305, once the trial court determined both Husband and Wife to be aggressors, it was not permitted to choose between the two in granting relief to only one of them. We disagree.

Husband's argument was recently addressed and rejected in *K.L.*, *supra*, 70 Cal.App.5th 965. As explained in that case, "in making [the findings required by section 6305,] the court 'shall consider' both the intent of the law protecting domestic violence victims and the specific circumstances of the history of domestic violence in the case before it. [Citation.] Specifically, the statute mandates that the court determine which of the parties is the 'most significant' aggressor. [Citation.] Such a determination requires that the acts of the parties be weighed against each other. As a result, in

13

deciding whether mutual restraining orders should issue, the trial court must consider the parties' respective alleged acts of domestic violence in concern, and not separately . . . ." (*Id.* at p. 979.) We agree with *K.L.* that the plain words of the statute clearly contemplate the trial court will: weigh the acts of the parties; determine whether one of the parties should be considered the primary or dominant aggressor; and issue a mutual restraining order only in the event neither party can fairly be characterized as the primary aggressor.

In reply, Husband acknowledges the holding in *K.L.*, *supra*, 70 Cal.App.5th 965, but claims that even if a trial court is permitted to weigh the acts of the parties, the trial court in this case still abused its discretion by failing to make factual findings with respect to each of the factors identified in section 6305. However, this argument ignores the fact that section 6305 acts only to limit the issuance of a mutual restraining order. The presence of the statutory factors and requirement of detailed factual findings are necessary prerequisites to a grant of mutual relief. (§ 6305, subd. (a); *K.L.*, *supra*, 70 Cal.App.5th at p. 979 ["[T]he language of the statute makes clear that mutual restraining orders are the exception, and 'shall not issue' unless the trial court makes specific findings . . . ."].) Nothing in the statute mandates the issuance of a mutual restraining order. Nor does the statute require detailed findings of fact when the court declines to issue a mutual restraining order.

In this case, the trial court granted Wife's petition for a DVPA restraining order and denied Husband's competing petition. While it was appropriate for the trial court to consider the factors set forth in section 6305 in order to determine whether granting mutual relief would be appropriate, the trial court was not required to make detailed

14

factual findings because it ultimately decided not to grant mutual relief. Because section 6305 does not impose any requirements when denying relief, the trial court was required only to follow the general rule applicable to all petitions and provide "a brief statement of the reasons for the decision in writing or on the record." (§ 6340, subd. (b).) The trial court clearly did so here, expressly stating on the record that it considered Husband to be "the primary aggressor in this case," notwithstanding the fact that it also believed Wife had been a primary aggressor with respect to one of the alleged incidents.

Thus, the trial court did not abuse its discretion by considering whether Husband should be considered a dominant or primary aggressor within the meaning of section 3605. Nor did the trial court abuse its discretion by failing to make detailed factual findings on all factors referenced in section 3605, since such findings are not required where the trial court does not grant mutual relief.

D. *Denying Husband's Custody Request Was Not an Abuse of Discretion*

Finally, Husband contends that, separate from the issue of whether a DVPA restraining order was appropriate, the trial court abused its discretion in denying his request for custody of his children. According to Husband, the trial court was mandated by section 6304 to consider the children's welfare when denying his petition but failed to do so. We disagree.

Initially, we note that Husband has conflated two separate issues on appeal, arguing that the trial court abused its discretion because it "did not consider whether the issuance of a protective order, to protect the children from Wife's domestic violence, was appropriate" and thereafter repeatedly arguing that the trial court should have, at the very

least, issued a protective order to protect his children from Wife.  However, the question of whether the trial court should have issued a protective order for the purpose of protecting the children from Wife is distinct from the question of whether the trial court should have issued a custody order in Husband's favor.

With respect to the first question, the record shows that Husband never asked the trial court to issue a restraining order for the purpose of protecting his children.  His petition requested a restraining order only to protect himself, despite having the option to include his children as part of his request.  Even at the time of the hearing, Husband expressly acknowledged in his closing argument that his request for a restraining order did not include his children.  Thus, Husband never raised the issue in the trial court proceedings, and we decline to consider whether such an order would have been appropriate in this case.  (*Franz v. Board of Medical Quality Assurance* (1982) 31 Cal.3d 124, 143 ["Appellate courts generally will not consider matters presented for the first time on appeal."]; *Meridian Financial Services*, *Inc. v. Phan* (2021) 67 Cal.App.5th 657, 699 [same].)

Instead of seeking a restraining order for the protection of his children, Husband's petition requested the trial court change the current custody arrangement between the parties in order to award him sole legal and physical custody of his children.  Thus, the only issue the trial court was called upon to decide with respect to the children was whether awarding Husband sole custody of his children was appropriate.  The trial court denied Husband's custody request; referred the matter for the relevant child welfare services agency to conduct an investigation; and set the matter for a hearing on the issue

16

of custody pursuant to section 3027.[3]  It is this decision that we review on appeal and, as we explain, the record clearly shows the trial court did not abuse its discretion.

Following an extensive evidentiary hearing, the trial court made affirmative findings that Husband committed domestic violence within the meaning of section 3044. It also made findings that, even assuming Wife had committed acts of domestic abuse against the children in the past, Husband had been "grossly derelict" in failing to take any action to protect his children at the time of these events.  Finally, the trial court found that Husband had been "grossly negligent" for leaving loaded firearms within access of his minor children.  Husband expressly concedes the evidence was sufficient to support these findings on appeal.  Given these findings, the trial court could reasonably conclude that Husband, as the party requesting a change of custody, had not met his burden to show that such an order was in the children's best interest.  (*In re Marriage of Mehlmauer* (1976) 60 Cal.App.3d 104, 109 ["[T]he moving party [bears] the burden of showing that the best interests of the child require[s] the sought custody change."].)

While Husband complains that the trial court also made findings that Wife had previously abused the children, he ignores the fact that the trial court expressly referred the matter to the relevant child welfare agency for further investigation and set the matter for a further hearing to consider any necessary orders upon completion of that investigation.  This procedure is expressly authorized by statute whenever the trial court

---

[3]  Section 3027, subdivision (b), provides in pertinent part:  "If allegations of child abuse . . . are made during a child custody proceeding, the court may request that the local child welfare services agency conduct an investigation of the allegations . . . .  Upon completion of the investigation, the agency shall report its findings to the court."

develops concerns regarding a child's safety during a custody hearing (§ 3027) and Husband has not explained why such an order was insufficient to address any perceived safety concerns in this case. As such, Husband has failed to show the trial court abused its discretion in denying his custody request.

## IV. DISPOSITION

The order is affirmed. Respondent to recover her costs on appeal.


FIELDS
J.

We concur:


McKINSTER
Acting P. J.


SLOUGH
J.


18

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| MELISSA BETH SALMON, | |
| Plaintiff and Respondent, | E075748 |
| v. | (Super.Ct.No. DVHE1906683) |
| STEPHEN SALMON, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Appellant. | |


ON THE COURT'S OWN MOTION

The nonpublished opinion filed November 14, 2022, meets the standards for publication as specified in California Rules of Court, rule 8.1105(c)(4), (5), and (6).

IT IS SO ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

FIELDS _____
J.

We concur:


McKINSTER _____
Acting P. J.


SLOUGH _____
J.


1