Filed 6/13/24  Quinn v. Cardiff Towne Center CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DARREN J. QUINN, | D081414 |
| Plaintiff and Appellant, | (Super. Ct. No. 37-2020-00040378-CU-MC-NC) |
| v. | |
| CARDIFF TOWNE CENTER, LLC, | ORDER RECALLING & CORRECTING REMITTITUR & MODIFYING OPINION |
| Defendant and Respondent. | NO CHANGE IN JUDGMENT |

THE COURT:

Respondent's motion to recall and correct remittitur issued on April 10, 2024, is granted on the basis of inadvertence.  Accordingly, we recall the remittitur and reinstate the appeal for the limited purpose of modifying the opinion and correcting the disposition to address costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)  The Clerk of the San Diego Superior Court is directed to destroy the electronic copy and any paper copies of the remittitur issued on April 10, 2024.

It is ordered that the opinion filed January 31, 2024, is modified as follows:

The following is added to the end of the disposition on page 41:

"Appellant Darren Quinn shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3).)"

There is no change in the judgment.

The Clerk of the Court of Appeal is directed to immediately issue the remittitur.


McCONNELL, P. J.

Copies to:  All parties

2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DARREN J. QUINN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CARDIFF TOWNE CENTER, LLC,<br><br>    Defendant and Respondent. | D081414<br><br><br><br>(Super. Ct. No.<br>37-2020-00040378-CU-MC-NC) |

APPEAL from a judgment and orders of the Superior Court of San Diego County, Cynthia A. Freeland, Judge.  Reversed and remanded with directions.

Darren J. Quinn, in pro. per.; Law Offices of Darren J. Quinn for Plaintiff and Appellant.

Gordon & Rees, Charles V. Berwanger and Andrew Harris for Defendant and Respondent.

Plaintiff and appellant Darren J. Quinn appeals from a judgment of dismissal entered after the court sustained the demurrer of defendant and respondent Cardiff Town Center, LLC (Center) to Quinn's second amended complaint for declaratory relief, in which Quinn sought a judicial declaration

of an implied dedication to the public (first and second causes of action) or a private prescriptive easement (third cause of action) concerning certain property in Cardiff by the Sea, California (Cardiff). The court entered the judgment at Center's request after Quinn did not timely amend his first cause of action after the court granted him leave to amend that claim. Quinn contends he has stated facts sufficient to constitute causes of action, or alternatively he has shown a reasonable possibility that the defects identified by the court can be cured by amendment, such that this court should reverse the judgment. We hold Quinn's allegations of his first and third causes of action sufficed to state viable claims, but that the court properly sustained Center's demurrer to his second cause of action without leave to amend. We reverse the judgment and direct the court to enter a new order sustaining the demurrer in part and overruling it in part as set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

We take the facts from Quinn's operative complaint, accepting as true all well-pleaded material facts but not "contentions, deductions, or conclusions of fact or law," and considering matters properly subject to judicial notice. (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; *San Diego Unified School Dist. v. Yee* (2018) 30 Cal.App.5th 723, 726.)[1]

Center owns real property located on Newcastle Avenue in Cardiff (the Newcastle property). Quinn resides in and owns land adjacent to the

---

[1] Many of Quinn's allegations are pleaded "on information and belief." But that does not render them defective as long as Quinn does not have actual or presumed knowledge of the facts, and the allegations are otherwise material and factual, not impermissible contentions, deductions, or conclusions. (See *Dey v. Continental Central Credit* (2008) 170 Cal.App.4th 721, 725, fn. 1; *People v. Superior Court* (*J.C. Penney Corp., Inc.*) (2019) 34 Cal.App.5th 376, 415, fn. 25.)

2

Newcastle property. The Newcastle property is located within 1,000 yards inland of the mean high tide line of the Pacific Ocean. In about 1911, 25-by 100-foot bungalow lots in Cardiff were offered for sale. Those lots faced a 40-foot avenue in the front and an alley in the back. In mid-1953, the Newcastle property was vacant with a path or road extending from the adjacent alley.

Before October 1968, the Newcastle property was developed so as to create additional alley space and/or parking spaces (the additional spaces) that were adjacent to the residential properties, including Quinn's property, on one side of the existing alley. Quinn alleges the Newcastle property's owner before March 4, 1972, Fred Brockett, intended that the public use the additional spaces, and the public used those spaces without objection or interference for more than five years prior to March 4, 1972 (on or before March 4, 1967).

After March 4, 1972, the United States Postal Service (USPS) expended public funds to create, clean or maintain the additional spaces on the Newcastle property. Brockett knew or should have known that the public had been making use of these spaces on the property for over five years.

Quinn is part of a limited group of adjacent residential property owners or residents that have freely, openly and continuously used the additional spaces on the Newcastle property for over five years in a manner distinguishable from the interest of the public generally. Quinn and the other owners openly and continuously parked their vehicles overnight in the Newcastle property's parking spaces so as to provide parking for their own adjacent properties.

Before 2020, there were no signs on the Newcastle property indicating the owner had the right to control passage on the Newcastle property or that passage was by the owner's permission. In about January 2021, a sign was

placed on the Newcastle property stating, "Right to pass by permission, and subject to control, of owner:  Section 1008 Civil Code."  Quinn and the other adjacent property owners had been using the property for over seven years before a Civil Code section 1008 sign was posted there, and no owners of the Newcastle property took serious steps to discourage the adjacent property owners' use.  Quinn and the other property owners' use was with the Newcastle property owner's full knowledge, without them asking or receiving permission to do so and without anyone objecting.

In November 2020, Quinn sued Center seeking declaratory relief regarding the existence of easements acquired by him or the public at large for access through the Newcastle property.  He eventually filed a second amended complaint with three declaratory relief causes of action: one seeking an implied dedication to the public regarding the additional spaces before March 4, 1972, another regarding a public easement regarding the additional spaces created after March 4, 1972, and a third regarding a private prescriptive easement.  More specifically, Quinn's first cause of action pertained to a dedication "pursuant to *Gion v. Santa Cruz* (1970) 2 Cal.3d 29" prior to the March 4, 1972 effective date of Civil Code[2] section 1009, which prospectively abrogated *Gion*'s holding.[3]  The second cause of action pertained to an implied dedication to the public after the March 4, 1972

_____

[2]  Undesignated statutory references are to the Civil Code.

[3]  As to the first cause of action, Quinn sought a judicial declaration that: "(a) Prior to March 4, 1972, the public had rights of access through and/or use of the [additional spaces] on [the Newcastle property] pursuant to *Gion* [*v. City of Santa Cruz, supra,* 2 Cal.3d 29]; [¶] (b) The public easement on [the Newcastle property] pursuant to *Gion* prior to March 4, 1972[,] was not affected by [section] 1009 which operates prospectively; and [¶] (c) Elimination of the [additional spaces] on [the Newcastle property] would cause serious public safety issues."

effective date of section 1009, based on allegations that the USPS expended public funds on the property.[4] The third cause of action pertained to a private prescriptive easement based on a defined group of property owners' open and continuous use of the additional spaces.[5]

Center demurred to the second amended complaint on grounds the complaint failed to state causes of action, and the causes of action were uncertain, ambiguous and unintelligible. Specifically, it argued as to the claim of an implied dedication by adverse use before *Gion v. City of Santa Cruz, supra,* 2 Cal.3d 29, Quinn could not establish long-continued, adverse use for a five-year period before the enactment of section 1009: "With the property developed in October 1968, less than four years before the enactment of . . . section 1009, [Quinn] has not pled, and cannot plead, the

---

[4] On the second cause of action, Quinn sought a judicial declaration that: "(a) After March 4, 1972, the public had rights of access through and/or use of the [additional spaces] on [the Newcastle property] pursuant to at least . . . [section] 1009[, subdivision] (d); [¶] (b) The public easement on [the Newcastle property] pursuant to [section] 1009[, subdivision] (d) was not affected by [Center] posting one or more signs January 27, 2021[,] [*sic*] pursuant to . . . [section] 1008 which addresses a private 'easement by prescription' rather than an implied dedication to the public; and [¶] (c) Elimination of the [additional spaces] on [the Newcastle property] would cause serious public safety issues."

[5] As to this cause of action, Quinn sought a judicial declaration that: "(a) The private easement in the [additional spaces] was appurtenant to the property of plaintiff and other adjacent residential property owners. [¶] (b) Plaintiff and other adjacent residential property owners/residents openly, notoriously and continuously parked their vehicles overnight in the parking spaces on [the Newcastle property] so as to provide parking for their own adjacent properties. [¶] (c) Unlike an easement in gross which is merely a personal right to use the land of another, plaintiff and adjacent residential landowners acquired an appurtenant easement that can pass with their land." (Some capitalization omitted.)

5

required time for an implied dedication, as the property to which the subject dedication is sought—to wit, the [additional spaces]—were [*sic*] not created until the Property was developed." Center argued given the deficiency, Quinn was then required to plead the prior owner's actual consent, and it was insufficient and "speculative" to plead the prior owner intended the public to use the additional spaces. Center argued the cause of action was vague, ambiguous and failed to state facts to support the claim and sought-after relief.

Center argued the second cause of action failed given the public streets running between the coastline and the Newcastle property,[6] and thus under section 1009, subdivision (b), no use of the noncoastal property could give rise to a vested public right absent the owner's express, irrevocable offer of dedication to public use. It argued Quinn's reliance on the USPS expenditure of public funds implicated only a right of use for the governmental entity, not the public at large, and the governmental funds in any event were expended under the terms of an express lease agreement reflecting Center's express permission.

As for the third cause of action for a private prescriptive easement, Center argued Quinn's allegations demonstrated any use of the Newcastle property was permissive and not adverse. Center stated that within months of the USPS's exit from the property the owner posted signs asserting a right of control under section 1008, and thus the prescriptive easement's five-year period did not ripen during that time, or ever. Center asked the court to take judicial notice of several documents including a map of the area and USPS documents related to leases on the property. Quinn opposed the demurrer.

---

[6] Center argued the presence of the streets took Quinn outside of an exception for coastal property contained in section 1009, subdivision (e), which we discuss more fully below.

Following a hearing, the trial court granted Center's requests for judicial notice and sustained its demurrer to the first cause of action with 30 days leave to amend, but sustained without leave to amend its demurrers to the second and third causes of action. As to the first cause of action for an implied in law dedication, the court ruled the second amended complaint "fails to state facts establishing an implied in law dedication based upon the public's purported use of the additional alley spaces and parking spaces for more than five years. The [second amended complaint] alleges that the Property, with the additional alley spaces and parking spaces, was developed [at] some point before October 2, 1968. However, October 2, 1968[,] is less than five years from the March 4, 1972 enactment of [section] 1009. The [second amended complaint] does not allege when the Property was developed. Moreover, there is no allegation of open and continuous use of the Property on or before March 4, 1967." The court disregarded the allegation about Brockett's intent as "conclusory and speculative . . . ."

As for Quinn's second cause of action based on section 1009, subdivision (d), the court found Quinn's allegations insufficient: "[B]y the plain terms of the statute, the rights obtained under [section] 1009[, subdivision] (d) run to the governmental entity, not an individual or the public at large. Moreover, as evidenced by the series of leases attached to [Center's] request for judicial notice, the [USPS] operated its facilities at the Property with the owner's express permission. The use of the Property by the [USPS], its patrons, and others was permissive, and funds expended by the [USPS] were pursuant to the terms of the lease agreement." The court ruled the owner's express permission rendered the statute inapplicable.

The court likewise sustained without leave to amend the demurrer to Quinn's third cause of action for a prescriptive easement. It ruled the

7

pleading and judicially noticeable facts demonstrated that the USPS leased the Property for its operations from October 2, 1968, through at least December 31, 2019, and "[t]he [USPS]'s use of the land during that time was not adverse as the owner expressly permitted it under the leases." The court stated that "[a] tenant cannot gain a prescriptive easement during its tenancy" and observed Quinn had not cited authority for the proposition that a tenant's permissive use of property conveys prescriptive rights to third parties. The court further ruled the five-year period for adverse use began running once the USPS's lease expired on December 31, 2019, and Center posted its section 1008 " 'Right to Pass' " sign on January 27, 2021, which precluded the establishment of a prescriptive easement. As to both the second and third causes of action, the court ruled Quinn had not demonstrated a reasonable probability that the deficiencies could be cured by amendment.

Quinn did not amend his first cause of action within 30 days. Instead, he moved for a 60-day extension of time "to seek facts to determine when the parking spaces and additional alley space were created." (Capitalization omitted.) In an accompanying declaration, Quinn stated he experienced "unexpected complications locating the building records or completion dates for the parking spaces and additional alley space in connection with the building of the Cardiff Post Office," which was built before October 2, 1968. (Some capitalization omitted.) He summarized his efforts to locate documents pertaining to when the post office was built. Quinn stated he "cannot currently allege additional facts in support of the first cause of action for public dedication of parking spaces and additional alley space" but he could "currently allege new facts that support [his] third cause of action for private prescriptive easement under *King v. Wu* (2013) 218 Cal.App.4th

8

1211." (Emphasis and some capitalization omitted.) Quinn asked that the court's final order reference an attached proposed third amended complaint, which contained a single cause of action for declaratory relief regarding a private prescriptive easement.

Center thereafter successfully moved ex parte to have judgment entered for Quinn's failure to timely amend his pleading.[7] The court granted the motion and dismissed the action. In part, it found "Quinn failed to file a timely amendment to the second amended complaint within the period set forth in this court's minute order of September 2, 2022," and "the motion to extend time filed by [Quinn] admits that amendment of the first cause of action in the second amended complaint is not possible at this time." (Some capitalization omitted.) After the court modified its order and judgment at Quinn's request,[8] Quinn filed this appeal from that judgment and the attached orders.

---

[7] Center's ex parte application challenged the timeliness of Quinn's request for an extension of time. The declaration of Center's counsel states: "Pursuant to the court's September 2, 2022 minute order, to which notice was waived, the deadline to file a third amended complaint amending the first cause of action, to which leave had been granted, was October 3, 2022, as October 2, 2022[,] fell on a Sunday. At approximately 7:36 p.m., I received an e-mail with Quinn's current motion." (Some capitalization omitted.) Center's ex parte papers make it clear that Quinn's motion was received via e-mail on Monday, October 3, 2022. In opposition to Center's request, Quinn stated he had attached his proposed third amended complaint so as to make a record for this court.

[8] The court excised from both its October 25, 2022 order and the November 22, 2022 judgment a finding that Quinn's third amended complaint failed to set forth facts sufficient to state a cause of action so as to warrant reconsideration of its prior demurrer ruling.

9

I. *California Pleading Requirements for Declaratory Judgment Actions and Demurrer Legal Principles*

In California, a complaint is sufficient if it contains "[a] statement of the facts constituting the cause of action, in ordinary and concise language." (Code Civ. Proc., § 425.10, subd. (a); see *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 550; *Thomas v. Regents of University of California* (2023) 97 Cal.App.5th 587, 610.) Under this standard, "the complaint ordinarily is sufficient if it alleges ultimate rather than evidentiary facts." (*Doe*, at p. 550.) " 'Generally, courts and litigants are guided in making these distinctions by the principle that a plaintiff is required only to set forth the essential facts with " ' " 'particularity to acquaint a defendant with the nature, source and extent of [the plaintiff's] cause of action.' " ' " ' " (*Thomas*, at p. 611, quoting *Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1027-1028.) A " '[p]laintiff may allege on information and belief any matters that are not within his personal knowledge, if he has information leading him to believe that the allegations are true.' " (*Doe*, at p. 550.) "A complaint will be upheld ' "so long as the pleading gives notice of the issues sufficient to enable preparation of a defense." ' " (*Thomas*, at p. 611.)

" 'A declaratory judgment action provides litigants with a quick, efficient means of resolving a disputed issue.' [Citation.] 'Unlike coercive relief (such as damages, specific performance, or an injunction) in which a party is ordered by the court to do or to refrain from doing something, a declaratory judgment merely declares the legal relationship between the parties.' " (*Stronghold Engineering Incorporated v. City of Monterey* (2023) 96 Cal.App.5th 1203, 1208, quoting *Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897.) The declaratory relief statute, Code of Civil Procedure

section 1060, provides in part: "Any person . . . who desires a declaration of his or her rights or duties . . . in respect to . . . property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises . . . ." (Code Civ. Proc., § 1060.) " ' " 'The fundamental basis of declaratory relief is the existence of an actual, present controversy over a proper subject.' " [Citations.] The language of Code of Civil Procedure section 1060 appears to allow for an extremely broad scope of an action for declaratory relief[.]' " (*Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 181; see also *Nede Mgmt., Inc. v. Aspen American Ins. Co.* (2021) 68 Cal.App.5th 1121, 1130.)

For pleading purposes, "[t]o allege facts sufficient to state a cause of action for declaratory relief, the plaintiff must allege 'two essential elements: "(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party." ' " (*Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 235, quoting *Lee v. Silveria* (2016) 6 Cal.App.5th 527, 546; see also *Longshore v. County of Ventura* (1979) 25 Cal.3d 14, 29 ["[A] complaint for declaratory relief is sufficient if it alleges facts demonstrating the existence of an actual controversy between the parties about their legal rights and duties and requests adjudication of the controversy"]; *Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82 Cal.App.4th 592, 605 [it is "[t]he existence of an 'actual controversy relating to the legal rights and duties of the respective parties,' [that] suffices to maintain an action for declaratory relief"].)

Further, in a declaratory relief action, the ultimate facts are those facts establishing the existence of an actual controversy; the plaintiff "need not establish that [he] is also entitled to a favorable judgment." (*Ludgate Ins. Co.*

11

*v. Lockheed Martin Corp.*, *supra*, 82 Cal.App.4th at p. 606; see also *Childhelp, Inc. v. City of Los Angeles*, *supra*, 91 Cal.App.5th at pp. 235-236 [if the pleading requirements for declaratory relief are met, " 'the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration' "], quoting *Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 549-550; *Salsbery v. Ritter* (1957) 48 Cal.2d 1, 7.)

In assessing the order sustaining Center's demurrer, settled principles apply. " '[W]e examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . We also consider matters which may be judicially noticed." . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra*, *supra*, 8 Cal.5th at p. 768; see also *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.) We will accept facts that " 'may be implied or reasonably inferred from [the complaint's properly pleaded] allegations. [Citation.] Because such factual allegations "however odd or improbable" [citation], are to be accepted, " ' "the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court." ' " [Citation.] "[A]ny particular count which is well pleaded will not be affected by defects in a separate cause of action, so long as inconsistent or antagonistic facts are not pled." ' " (*Thomas v. Regents of University of California*, *supra*, 97 Cal.App.5th at p. 611.) The reviewing court must liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 537; *Thomas*, at p. 605.)

12

" 'Our sole consideration is an issue of law—whether the plaintiff's complaint is sufficient "to state a cause of action under any legal theory." [Citations.] Stated another way, the complaint "survives a general demurrer insofar as its states, however inartfully, facts disclosing some right to relief." ' " (*Thomas v. Regents of University of California, supra*, 97 Cal.App.5th at p. 611; see also *Zhang v. Superior Court, supra*, 57 Cal.4th at p. 370.)

Normally, in reviewing a demurrer that has been sustained without leave to amend, " ' " 'we decide whether [the plaintiff has met his burden to show] there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' " ' " (*City of Coronado v. San Diego Association of Governments* (2022) 80 Cal.App.5th 21, 35.) Such a showing may be made for the first time on appeal. (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746 [the "issue of leave to amend is always open on appeal, even if not raised by the plaintiff"]; *Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 144-145.)

But here, while the operative complaint is Quinn's second amended complaint, the court ruled on Center's first demurrer. With respect to the second and third causes of action on which the court denied any opportunity to amend, the standard is whether the operative complaint is "incapable of amendment," and leave to amend should be "liberally allowed as a matter of fairness . . . ." (*City of Stockton v. Superior Court, supra*, 42 Cal.4th at p. 747;[9] see also *JPMorgan Chase Bank, N.A. v. Ward* (2019) 33 Cal.App.5th

---

[9] *City of Stockton v. Superior Court, supra*, 42 Cal.4th 730 also involved the party's second amended complaint, as to which it had not had an opportunity to amend in response to a Government Claims Act defense. (*Id.* at p. 747.)

678, 684.) In such a case, " '[d]enial of leave to amend is appropriate only when it conclusively appears that there is no possibility of alleging facts under which recovery can be obtained.' " (*Eghtesad v. State Farm General Insurance Company* (2020) 51 Cal.App.5th 406, 411, 412; see also *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 800; *Tarrar Enterprises, Inc. v. Associated Indemnity Corp.* (2022) 83 Cal.App.5th 685, 689.)

    II. *Causes of Action for Implied Dedication of Public Easement*
A. *Legal Principles*

    " ' "Dedication has been defined as an appropriation of land for some public use, made by the fee owner, and accepted by the public. By virtue of this offer which the fee owner has made, he is precluded from reasserting an exclusive right over the land now used for public purposes. American courts have freely applied this common law doctrine, not only to streets, parks, squares, and commons, but to other places subject to public use. California has been no exception to the general approach of wide application of the doctrine." ' " (*Friends of Hastain Trail v. Coldwater Development LLC* (2016) 1 Cal.App.5th 1013, 1027 (*Coldwater*), quoting *Friends of the Trails v. Blasius* (2000) 78 Cal.App.4th 810, 820 (*Blasius*).) Dedication may also occur pursuant to statute. (*Coldwater*, at p. 1027.)

    "Under the common law, a dedication may be made either expressly or by implication." (*Scher v. Burke* (2017) 3 Cal.5th 136, 141; *Brumbaugh v. County of Imperial* (1982) 134 Cal.App.3d 556, 562; *Coldwater*, *supra*, 1 Cal.App.5th at p. 1027.) Under either type of dedication, there must be an offer of dedication and an acceptance of that offer by the public. (*Scher*, at p. 141.) "An offer of dedication may be 'implied in fact' if there is proof of the owner's actual consent to the dedication. [Citations.] An offer of dedication

14

may also be 'implied by law' [citation] if the public has openly and continuously made adverse use of the property for more than the prescriptive period [citation]." (*Ibid.*; see also *Union Transp. Co. v. Sacramento County* (1954) 42 Cal.2d 235, 241, abrogated in part on other grounds by Sts. & Hy. Code, §§ 941, 1806 as stated in *Coldwater*, at p. 1027; *Brumbaugh*, at p. 562; *Mikkelsen v. Hansen* (2019) 31 Cal.App.5th 170, 176 [dedication is implied in fact when "the acts or omissions of the owner afford an implication of actual consent or acquiescence to dedication"].) " '[W]here . . . actual consent and acquiescence can be proved, then the length of time of the public use ceases to be of any importance, because the offer to dedicate, and the acceptance by use, both being shown, the rights of the public have immediately vested.' " (*Union Transp. Co.*, at p. 241.)

In the consolidated cases of *Gion v. City of Santa Cruz, supra*, 2 Cal.3d 29 and *Dietz v. King* (*Gion*), the California Supreme Court held that "the law of implied dedication for public use, unlike the law of adverse possession or easement by prescriptive rights, does not require a showing of a personal claim of right. Rather, litigants 'seeking to show that land has been dedicated to the public need only produce evidence that persons have used the land as they would have used public land' for more than the prescriptive period of five years. [Citation.] When such a showing has been made . . . the law will not presume that the public has used the property under a license from the owner. [Citation.] An owner who seeks to negate a finding of intent to dedicate the lands therefore 'must either affirmatively prove that he has granted the public a license to use his property or demonstrate that he has made a bona fide attempt to prevent public use.' " (*Scher v. Burke, supra*, 3 Cal.5th at pp. 141-142, quoting *Gion*, at pp. 39-41.)

15

As to adverse use, *Gion* explained:  "What must be shown is that persons used the property believing the public had a right to such use.  This public use may not be 'adverse' to the interests of the owner in the sense that the word is used in adverse possession cases.  If a trial court finds that the public has used land without objection or interference for more than five years, it need not make a separate finding of 'adversity' to support a decision of implied dedication."  (*Gion, supra,* 2 Cal.3d at p. 39; see *Brumbaugh v. County of Imperial, supra,* 134 Cal.App.3d at p. 564.)  *Gion* further explained that the rules governing implied dedication were not limited to roadways or land bordering roads, but extended to land used by the public for other purposes.  (*Scher v. Burke, supra,* 3 Cal.5th at p. 142; *Gion,* at pp. 41-42.)

Thus, in *Gion* and its consolidated case, the court held based on continuous use of coastal property for public recreation purposes that there was an implied dedication of property rights.  (*Scher v. Burke, supra,* 3 Cal.5th at p. 142; *Gion, supra,* 2 Cal.3d at p. 43.)  And the public use was " 'accentuated by the active participation of the city in maintaining the land and helping the public to enjoy it.' "  (*Scher,* at p. 142; *Gion,* at pp. 43-44.)  The court "considered it determinative that 'the public used the land in public ways, as if the land was owned by a government, as if the land were a public park.' "  (*Scher,* at p. 142; *Gion,* at p. 43.)

Following *Gion,* the Legislature enacted section 1009 in response to " 'severe . . . criticism' " of the decision.  (*Scher v. Burke, supra,* 3 Cal.5th at p. 142, see also *id.* at p. 148.)  Section 1009 "operates prospectively only, forbidding reliance only on post-1972 public use to support a claim of implied

16

dedication." (*Scher,* at p. 147.)[10] The statute does not affect rights that vested before March 4, 1972. (*Blasius, supra*, 78 Cal.App.4th at p. 823.) To prove a common law dedication of property to the public before the change in law in 1972, a litigant may still rely upon proof of open and continuous use by the public for the prescriptive period. (*Gion, supra*, 2 Cal.3d at p. 38; see also *Union Transp. Co. v. Sacramento County, supra,* 42 Cal.2d at p. 240 [question is whether the public has used the land " 'for a period of more than five years with full knowledge of the owner, without asking or receiving permission to do so and without objection being made by anyone' "].) "The ' "issue is ordinarily one of fact, giving consideration to all the circumstances and the inferences that may be drawn therefrom. The use may be such that the trier of fact is justified in inferring an adverse claim and user and imputing constructive knowledge thereof to the owner." ' [Citation.] Each inquiry depends on ' "the facts and circumstances attending the use." ' " (*Coldwater, supra*, 1 Cal.App.5th at pp. 1027-1028; *Gion*, at pp. 40-41; *County of Los Angeles v. Berk* (1980) 26 Cal.3d 201, 214.)

After March 4, 1972, an implied dedication to the public may be created under particular circumstances when a governmental entity has visibly improved, maintained, or cleaned private land by the expenditure of public

10 Subdivision (b) of the statute applies to noncoastal property. It provides in part that ". . . except as otherwise provided in subdivision (d), no use of [private real property] by the public after the effective date of this section shall ever ripen to confer upon the public or any governmental body or unit a vested right to continue to make such use permanently" without an express dedication by the owner. (§ 1009, subd. (b); see *Blasius, supra*, 78 Cal.App.4th at p. 823.) Subdivision (b) expressly excludes from its scope "coastal property which lies within 1,000 yards inland of the mean high tide line of the Pacific Ocean, and harbors, estuaries, bays and inlets thereof, but not including any property lying inland of the Carquinez Straits bridge, or between the mean high tide line and the nearest public road or highway, whichever distance is less." (§ 1009, subd. (e).)

17

funds. (§ 1009, subd. (d); see *Scher v. Burke, supra*, 3 Cal.5th at p. 142, fn. 3.) Under this exception (*Scher*, at p. 142, fn. 3), more fully discussed below, the government's use, "including any public use reasonably related to the purposes of such improvement . . . shall after five years ripen to confer upon the governmental entity a vested right to continue such use." (§ 1009, subd. (d).)

B. *Declaratory Judgment Regarding Public Dedication Before March 4, 1972*

As stated, Quinn's first cause of action sought a judicial declaration as to whether his and others' use gave rise to a public dedication under the law before the enactment of section 1009. The trial court determined that the viability of the claim turned specifically on when the Newcastle property was developed or the post office built, a date Quinn did not include in the operative complaint, as he merely alleged the property was developed "prior to October 2, 1968."

We asked the parties to provide supplemental briefing on the principles discussed above as to the proper pleading of declaratory relief, and specifically whether a demurrer was the proper method to challenge such claims. As to Quinn's first cause of action, Center merely acknowledges that timing of the public's use was the critical fact, and argues Quinn could not allege additional facts to support it, rendering procedural defects assertedly moot. We conclude the trial court erred by sustaining Center's demurrer to this cause of action. In general, a demurrer is not the appropriate means to test the merits of a declaratory judgment complaint because the plaintiff is entitled to a declaration of rights even if adverse to him. (See *Nede Mgmt., Inc. v. Aspen American Ins. Co., supra*, 68 Cal.App.5th at p. 1130; *Childhelp, Inc. v. City of Los Angeles, supra*, 91 Cal.App.5th at pp. 235-236; *Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 751.) This is

18

particularly true where the adequacy of the pleading turns on a question of fact, as the court felt it did here. (Compare *Nede*, at p. 1131 [" '[W]here a complaint sets forth a good cause of action for declaratory relief regarding only a disputed question of law, declarations on the merits unfavorable to a plaintiff have been upheld although such determinations were made in the form of a judgment sustaining a demurrer' "].) We reach this conclusion notwithstanding Quinn's alternative argument in his supplemental brief that the parties had "set forth disputed legal issues" as to this cause of action. Quinn argued a demurrer was not an appropriate challenge, and we agree.

Even if the court was correct in not treating Quinn's cause of action as one for declaratory relief, we conclude it erred by sustaining the demurrer as his second amended complaint's allegations, liberally construed, were sufficient to allege a cause of action for a pre-March 4, 1972 implied dedication to the public. As stated, Quinn was required to allege facts showing continuous public use of the additional spaces for the five-year prescriptive period before March 4, 1972 without substantial interference by the owner. The use was not required to be "adverse" in the usual sense; it was only necessary to allege facts showing the additional spaces were used as if they were public property. (*Gion, supra*, 2 Cal.3d at pp. 38-39; *Brumbaugh v. County of Imperial, supra,* 134 Cal.App.3d at p. 562.) Specific allegations as to when the Newcastle property was developed or the date the post office was built are evidentiary facts that Quinn was not required to plead to sustain a claim for a pre-March 4, 1972 implied dedication. Quinn's allegations that the additional spaces "were used by the public without objection or interference for more than five years prior to March 4, 1972 (*i.e.* on or before March 4, 1967)" are sufficient ultimate facts to maintain such a claim. On a demurrer we are unconcerned with Quinn's ability to prove these

19

facts. (*Thomas v. Regents of University of California, supra*, 97 Cal.App.5th at p. 617.) The allegations were sufficiently clear so as to apprise Center of the issues it was required to meet.

Quinn also alleged that Brockett, the property owner, before March 4, 1972, intended that the additional spaces be used by the public. The trial court disregarded the allegation as conclusory and speculative.[11] In the context of a request for a judicial declaration of an implied in fact public dedication on this ground, we view this allegation as one of ultimate fact. But an implied in fact public dedication may be based on the owner's "actual consent or acquiescence." (*Union Transp. Co. v. Sacramento County, supra*, 42 Cal.2d at p. 241; see also *Scher v. Burke, supra*, 3 Cal.5th at p. 141.) Quinn "at the demurrer stage . . . was not required to prove anything, only to allege facts showing or supporting an inference" (*Thomas v. Regents of University of California, supra*, 97 Cal.App.5th at p. 614) of such consent or acquiescence. Quinn did this in our view by alleging the additional spaces

---

11     There is case law standing for the proposition that "[t]he allegation of the parties' intent is a conclusion of fact, which need not be accepted for purposes of demurrer." (*Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1114; see also *JPMorgan Chase Bank, N.A. v. Ward, supra,* 33 Cal.App.5th at p. 689, fn. 10.) But the cases involve a "contracting party's intent." (*JPMorgan Chase*, at p. 689, fn. 10.) Even if we applied the principle beyond a contract action and disregarded the allegation about Brockett's intent, the complaint still contains the factual allegation that the public used the additional spaces without objection or interference, and that their use was with the Newcastle property owner's full knowledge, without them asking or receiving permission to do so and without anyone objecting. This alleges the owner's acquiescence sufficient for a implied public dedication. (*Union Transp. Co. v. Sacramento County, supra,* 42 Cal.2d at p. 241.)

were used "without objection or interference . . . ." At bottom, Quinn's allegations are sufficient to state a cause of action.

C. *Declaratory Judgment Regarding Public Dedication After March 4, 1972*

We reach a different conclusion as to the second cause of action for a judicial declaration pertaining to an implied dedication after March 4, 1972. Quinn contends his second amended complaint alleges facts necessary to state a claim for a public dedication under the exception stated in section 1009, subdivision (d). He acknowledges that the subdivision confers vested rights "upon the governmental entity . . . to continue such use," but maintains that "the 'use' referred to includes 'public use reasonably related to the purposes of [the government] improvement,' " in his case, the additional spaces. The trial court ruled that the such rights run to the government entity, not to the public at large. But Quinn argues "there is nothing in [section] 1009[, subdivision] (d) that prevents the public from asserting the right to continue its public use."

These arguments present a matter of statutory interpretation, a question of law. (*Mikkelsen v. Hansen, supra,* 31 Cal.App.5th at p. 178.) When a demurrer raises issues of statutory interpretation, "we apply the rules of statutory construction and exercise our independent judgment as to whether the complaint states a cause of action. [Citation.] Our first task in construing a statute is to ascertain the Legislature's intent in order to carry out the purpose of the law. If the statutory language is clear and unambiguous, no judicial construction is required. If the statute is ambiguous, the words must be construed in context in light of the statutory purpose." (*Morales v. 22nd Dist. Agricultural Assn., supra,* 1 Cal.App.5th at p. 537; see also *Mikkelsen v. Hansen,* at p. 178 [" '[W]e undertake our own interpretation of the determinative statute and assess any claims raised by

the parties completely anew' "].) As Quinn acknowledges in his supplemental brief, a demurrer may be appropriate where the matter involves statutory interpretation. Because Quinn's request for a judicial declaration on this ground presents a legal question, it may be resolved on the pleadings alone. (*Nede Mgmt., Inc. v. Aspen American Ins. Co., supra*, 68 Cal.App.5th at p. 1131.)

Our analysis begins and ends with the " ' "actual words of [section 1009, subdivision (d)]," "giving them a plain and commonsense meaning . . . ." ' " (*Mikkelsen v. Hansen, supra*, 31 Cal.App.5th at p. 178; see also *Raines v. U.S. Healthworks Medical Group* (2023) 15 Cal.5th 268, 278-279.) Where statutory language is clear, "courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Raines*, at p. 279; see also *Estate of Griswold* (2001) 25 Cal.4th 904, 911 ["If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs"].) If the language is unambiguous, we need not consider legislative history. (*Scher v. Burke, supra*, 3 Cal.5th at p. 148; *Mikkelsen*, at p. 181.)

In full, subdivision (d) of section 1009 provides: "Where a governmental entity is using private lands by an expenditure of public funds on visible improvements on or across such lands or on the cleaning or maintenance related to the public use of such lands in such a manner so that the owner knows or should know that the public is making such use of his land, such use, including any public use reasonably related to the purposes of such improvement, in the absence of either express permission by the owner to continue such use or the taking by the owner of reasonable steps to enjoin, remove or prohibit such use, shall after five years ripen *to confer upon the*

*governmental entity* a vested right to continue such use." (§ 1009, subd. (d), italics added.)

This language, particularly the italicized portion, is plain. Where the underlying conditions to invoke subdivision (d) exist—i.e., a government entity uses private land in the specified manner so as to give the owner notice of related public use—the government's use, as well as the related public use, will after the required time period ripen to confer *upon the governmental entity*—not the public at large or even the public using the property—a vested right to continue its use. This conclusion follows even if we were to engage in construction. As can be seen from other portions of the statute (§ 1009, subd. (b), see footnote 10, *ante*), the Legislature knew how to distinguish between vested rights given to the public and government entities, as it prohibited public use after March 4, 1972 from ripening "to confer [such rights] upon the public or any governmental body or unit . . . ." But it chose to apply the exception of subdivision (d) to give rights only to the governmental entity using private property. Had the Legislature intended to extend vested rights to the public, it would have said so. (Accord, *In re N.R.* (2023) 15 Cal.5th 520, 534; see *National Lawyers Guild, San Francisco Bay Area Chapter v. City of Hayward* (2020) 9 Cal.5th 488, 500 [" ' "Ordinarily, where the Legislature uses a different word or phrase in one part of a statute than it does in other sections or in a similar statute concerning a related subject, it must be presumed that the Legislature intended a different meaning" ' "], quoting *Rashidi v. Moser* (2014) 60 Cal.4th 718, 725.) We decline to "adopt an interpretation of a statute that would require insertion of language the Legislature knew how to include but did not include." (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Association* (2023) 94 Cal.App.5th 1050, 1079.)

23

In short, Quinn cannot state a cause of action for a public dedication after March 4, 1972, based on subdivision (d) of section 1009. " ' "[W]hile Code of Civil Procedure section 1060 entitles a plaintiff suing pursuant to its provisions to a declaration of rights and duties even if the eventual declaration may be adverse [citations], error of the trial court in refusing to entertain the action is nevertheless not prejudicial if it is clear from the face of the complaint that the plaintiff's position is untenable and that a declaration adverse to the plaintiff will end the matter." ' " (*Nede Mgmt., Inc. v. Aspen American Ins. Co., supra*, 68 Cal.App.5th at p. 1131.) "In this circumstance, courts treat the appellate opinion as 'in effect a declaratory judgment. [Citation.] The proper procedure is to modify the judgment to make that declaration and affirm the judgment as modified.' " (*Ibid.*) Because we conclude Quinn's second amended complaint was sufficient to state some claims and reverse the judgment, we direct the court to enter as part of its order that he is not entitled to a judicial declaration on this cause of action.

In his reply brief, Quinn argues he nevertheless may maintain a cause of action for an implied public dedication after March 4, 1972, because the Newcastle property is "coastal" within the meaning of section 1009, subdivision (e), taking it outside the reach of subdivision (b)'s prohibition of post-March 4, 1972 use from ripening into an implied public dedication. (See footnote 10, *ante*.) We note that other than pointing to his allegation that the additional spaces are "within 1,000 yards inland of the mean high tide line of the Pacific Ocean," Quinn did not argue in his opening brief that the property is coastal for purposes of section 1009. But Center raised the issue in response, arguing the Newcastle property is not coastal given the presence of two public streets between it and the coast. We address the point because

24

Quinn argues that if the property is coastal, he need not rely upon a claim for use ripening into a post-March 4, 1972 implied dedication under section 1009, subdivision (d), because the *Gion* standard would still apply to such use.

Subdivision (e) of section 1009 states: "Subdivision (b) shall not apply to any coastal property which lies within 1,000 yards inland of the mean high tide line of the Pacific Ocean, and harbors, estuaries, bays and inlets thereof, but not including any property lying inland of the Carquinez Straits bridge, or between the mean high tide line and the nearest public road or highway, whichever distance is less." A plain reading of this provision is that the "whichever distance is less" clause refers back to the only other distance specified in the subdivision—1,000 yards—for property lying within that distance inland of the mean high tide line of the Pacific Ocean. Because we see the provision as unambiguous, we need not turn to legislative history, which the parties did not provide in any event. Quinn does not dispute the presence of San Elijo Avenue and Pacific Coast Highway to the west of the Newcastle property between it and the coastline. The presence of the public roads takes the Newcastle property outside of the exclusion for coastal property.

### III. *Cause of Action for Private Prescriptive Easement*

A party claiming a prescriptive easement "must show use of . . . property which has been open, notorious, continuous and adverse for an uninterrupted period of five years." (*Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570; *Ditzian v. Unger* (2019) 31 Cal.App.5th 738, 743; *Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041, 1045.) " 'The term "adverse" in this context is essentially synonymous with "hostile" and

25

" 'under claim of right.' " [Citations.] A claimant need not believe that his or her use is legally justified or expressly claim a right of use for the use to be adverse. [Citations.] Instead, a claimant's use is adverse to the owner if the use is made without any express or implied recognition of the owner's property rights. [Citations.] In other words, a claimant's use is adverse to the owner if it is wrongful and in defiance of the owner's property rights.' " (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1181.) " 'To be adverse to the owner a claimant's use must give rise to a cause of action by the owner against the claimant. [Citation.] This ensures that a prescriptive easement can arise only if the owner had an opportunity to protect his or her rights by taking legal action to prevent the wrongful use, yet failed to do so.' " (*Ibid.*) The existence or nonexistence of the elements of a prescriptive easement is a question of fact "to be determined in light of the surrounding circumstances and the relationship between the parties." (*Warsaw*, at p. 572; *Husain v. California Pacific Bank* (2021) 61 Cal.App.5th 717, 726; *Ditzian*, at p. 743.)

In support of his third cause of action, Quinn alleges he "is part of a limited and definable number of adjacent residential property owners or residents that have freely, openly and continuously used the [additional spaces] on [the Newcastle property] for over five years in a manner distinguishable from the interest of the public generally." He alleges that he "and other adjacent residential property owner/residents openly, notoriously and continuously parked their vehicles overnight in the [Newcastle property's] parking spaces . . . so as to provide parking for their own adjacent properties" and had done so "[f]or over seven [ ] years before a single [section] 1008 sign was posted on [the Newcastle property] . . . ." Quinn continued in paragraph Nos. 37 and 38 of his second amended complaint: "No owners of [the Newcastle property] took serious steps to discourage the use by plaintiff

26

or other adjacent residential property owners for access through [or use of] the [additional spaces]" and "[he] and/or other adjacent residential property owners have used access through the [additional spaces] for a period of more than five years with full knowledge of the owner of [the Newcastle property], without asking or receiving permission to do so and without objection being made by anyone."

In his third amended complaint,[12] Quinn added allegations that the Newcastle property's owner "had at least constructive possession of the property at the expiration of each lease or lease renewal with the [USPS]" and the Newcastle property's former and current owners "could and should have taken action to interrupt the prescriptive use by the adjacent owners/residents" at the times they had constructive possession between the end of various lease expirations and the renewals of new leases. These allegations were expressly based on *King v. Wu* (2013) 218 Cal.App.4th 1211.

Given Quinn's allegations and the nature of his cause of action, we hold the court erred by sustaining Center's demurrer to this cause of action without leave to amend. As with Quinn's other causes of action, his third cause of action sought declaratory relief on a claim of prescriptive easement, and to state such a claim Quinn was not required to plead facts demonstrating he was entitled to such an easement, only that there was an actual controversy as to that claim on which he sought a judicial determination.

---

[12] Quinn made clear that he had submitted the third amended complaint to the lower court so as to make a record for this court, in an effort to show how he could amend to state a cause of action. As stated, Quinn is entitled to show how he could amend even for the first time in this court. Under the proper standard, the question is whether his pleading is incapable of amendment. We resolve that question in Quinn's favor.

27

We would reverse even if it were appropriate to reach the question of whether Quinn stated a cause of action for a prescriptive easement. Though we disregard legal conclusions and contentions in pleadings at the demurrer stage, we must nevertheless liberally interpret Quinn's pleadings. (*McBride v. Smith*, *supra*, 18 Cal.App.5th at p. 1182.) Doing so, we conclude his allegations of open and continuous use of the additional spaces for a period of more than five years without the owner's permission sufficed to state a claim for a prescriptive easement. (See *Otay Water Dist. v. Beckwith, supra,* 1 Cal.App.4th at p. 1046 [that claimant " 'never received permission' " for its adverse use "establishes [the claimant's] use was under a claim of right"]; *Applegate v. Ota* (1983) 146 Cal.App.3d 702, 710 [claim of right substantiated by evidence the claimant "believed they had a prescriptive right to use the road, they never asked permission, never discussed the use of the road with [the owners], used the road openly, and were never given permission by [the owners]" and "[n]o one ever questioned their right to use the road"].) Further, Quinn via his third amended complaint shows he can allege lease renewals occurring at various intervals, at which time the prior owners had constructive possession of the property and then "could and should have taken action to interrupt such use." (*King v. Wu*, *supra*, 218 Cal.App.4th at p. 1214.)

On appeal, Center repeats its demurrer arguments that Quinn's allegations of paragraph Nos. 37 and 38 showed any use of the Newcastle property was "permissive and not adverse" and thus his prescriptive easement claim was without merit. It also invokes section 1009, subdivision (f)(3) pertaining to when an owner "enters into a written agreement with any federal . . . agency providing for the public use of" coastal property ("property described in subdivision (e)"), arguing that the USPS "continuously used the

28

property as a full-service post office serving the public from 1967 through at least, December 31, 2019." Citing *Swartzburg v. Sampson* (1936) 11 Cal.App.2d 451 and Code of Civil Procedure section 326,[13] Center argues a tenant cannot obtain prescriptive rights during its tenancy. It argues Quinn's reliance on *King v. Wu*, *supra*, 218 Cal.App.4th 1211 is misplaced as there were no lapses between the leases at issue, which assertedly were "renewed without interruption for nearly 50 years." Center further maintains that given Quinn's allegations, even if it had constructive possession during lease renewal, it was within less than five years from its placement of the section 1008 sign such that a prescriptive easement did not ripen.

We reject the contentions. The first would have us strictly construe Quinn's allegations contrary to other allegations that his use was without receiving the owner's permission, which we will not do on a demurrer. We disagree in any event that Quinn's allegations in these paragraphs somehow demonstrate as a matter of law that the owner granted permission for his use. To the extent such an inference could be drawn from those allegations,

---

[13] The question in *Swartzbaugh* was: "Can one joint tenant who has not joined in the leases executed by her cotenant and another maintain an action to cancel the leases where the lessee is in exclusive possession of the leased property?" (*Swartzbaugh v. Sampson, supra*, 11 Cal.App.2d at p. 453.) At the cited page, the court, addressing a claim by the plaintiff, discussed rules concerning title and adverse possession. (*Id*. at p. 461.) The cited statute also involves adverse possession, a claim not made by Quinn here. (See *Hansen v. Sandridge Partners, L.P.* (2018) 22 Cal.App.5th 1020, 1032 [explaining the difference between prescriptive use and adverse possession].) Center invokes similar arguments based on these authorities again in its supplemental briefing to argue Quinn cannot maintain a cause of action for a private prescriptive easement as a matter of law.

29

Quinn's complaint is not incapable of amendment on this point, and the court should have granted Quinn leave to amend to cure any deficiency.

As for Center's section 1009, subdivision (f)(3) argument, we have already explained that the Newcastle property is not coastal, taking it outside that subdivision. But setting that aside, Center misstates Quinn's allegation, which was that his and others' open and continuous use took place for *over* seven years before the section 1008 sign was placed. It likewise misstates the holding in *King v. Wu*, *supra*, 218 Cal.App.4th 1211 where the court made clear that "California law does *not* require the actual owners of the adversely used land to have been in continuous possession for five years." (*Id*. at p. 1214, italics added.)[14]  Rather, "[i]f at any point during the adverse use an owner or a landlord has been in possession, *including constructively at the expiration of a renewable lease*, he or she could and should have taken action to interrupt such use." (*Ibid*., italics added.)  In *King v. Wu*, not only did the landlords have actual possession of their property in between leases, but the court observed the owners claimed they had "a number of tenants over the years" and thus "[a]s a result . . . [they] had constructive possession at the expiration of each of the various leases." (*Ibid*.)  The court concluded as a result that the owners could not establish any valid affirmative defense to the prescriptive easement claim and were not entitled to summary adjudication. (*Ibid*.)

### DISPOSITION

The judgment is reversed. The court is directed to enter a new order overruling Center's demurrer to the first and third causes of action, and

---

14    Center's brief omits the word "not" in this quote from *King v. Wu*. It is perhaps an inadvertent typographical error, but in any respect it significantly changes the court's statement of the law. (*King v. Wu*, *supra*, 218 Cal.App.4th at p. 1214.)

sustaining the demurrer to the second cause of action on grounds Quinn is not entitled to a judicial declaration on that cause of action.


O'ROURKE, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

31